■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JAMES AULET, Appellant. — Appeal by defendant from a judgment of the Supreme Court, Kings County (Kramer, J.), rendered January 30, 1981, convicting him of arson in the second degree, assault in the second degree, and reckless endangerment in the first degree, upon a jury verdict, and imposing sentence.

Judgment affirmed.

Defendant was convicted, *inter alia,* of arson in the second degree for intentionally setting fire to a three-story, six-apartment frame building located at 318 Harmon Street in Brooklyn, during the early morning hours of April 11, 1980. On appeal, defendant argues, *inter alia,* that he was deprived of his right to present witnesses in his own behalf. Under the circumstances of this case, we conclude that the trial court's refusal to allow defendant to produce witnesses to testify was not an abuse of discretion, and, in light of the lack of merit to defendant's other contentions, the judgment of conviction must be affirmed.

Miriam Barreto testified that on April 11, 1980 her friend Connie Trinidad was living in her second-floor apartment with her permission. When she arrived at the scene of the fire at approximately 3:00 A.M. her friend Connie was "black and blue", as if she had been beaten up. When she asked Connie what had happened, defendant told Connie to keep quiet.

Ethel Palacino, a 38-year-old file clerk and mother of four, who had resided at the premises for 16 years, and who occupied the other second-floor apartment on the date of the fire, testified that she saw defendant enter Trinidad's apartment at approximately 12:20 A.M. on April 11. During the following 20 to 25

minutes there was loud screaming, loud crashes and wall banging originating from the Trinidad apartment. She heard a man say "I'll fix you. You want to f**k around on me, four thousand dollars. I'll show you". She heard Trinidad scream, "Leave me alone", and it sounded as if the man was beating her. Mrs. Palacino called the police. Shortly thereafter she smelled smoke, and as she opened her door to exit the building she observed defendant leaving the building. When she later saw Trinidad, she observed that Trinidad was bruised and "all beat up in the face".

Glen Palacino, Mrs. Palacino's 13-year-old son, testified that he was awakened by crashing noises. He heard a man scream "I'll burn the f**kin house down". Shortly thereafter, he smelled smoke and exited the building.

Emanuel Palacino, Ethel's husband and a pharmaceutical setup operator for 12 years, testified that he was dozing off when he heard banging and crashing sounds coming from the Trinidad apartment. He heard defendant shout "For two thousand dollars, I'll give you four thousand dollars". He heard Trinidad say "Get off my hair. Get off my hair" and defendant's response "You want a scene in the hallway, I'll give you a scene". Defendant also shouted "I'll burn the whole building down. I don't care if the whole building burns down." When he subsequently saw Trinidad in the street she looked "all beat up".

Arlene Heilermann, a 31-year-old crossing guard who had lived at 318 Harmon Street her entire life, testified that she was awakened in her first-floor apartment by the sound of a crash. She heard a man yelling and cursing and a woman crying. When she heard defendant say "I'll teach you to f**k around" she called the police. She heard a child say "Mommy, get up. Give him the money." At one point defendant stated "What? Are you going to call the cops? You want a scene? I'll make a scene in the hall. Get upstairs", and the woman responded "Get off me". Defendant also said "I'll burn this building down. I'll burn this place down". Shortly thereafter she smelled smoke. When she saw Trinidad outside, "her face just looked like someone used [*sic*] for a basketball. It was just all beat up". When she accused defendant of starting the fire, Trinidad attacked her.

James Zahn, a fireman, testified that he responded to the fire in the Trinidad apartment at approximately 1:15 A.M., and that it took about five minutes to extinguish the fire. Richard Bianchi, a fire marshall who examined the premises shortly after the fire was extinguished, testified that the fire was incendiary, and that it had three places of origin — a couch, a loveseat, and a bag of clothing two rooms away from the other sources of the fire.

When he observed Trinidad she was "all beat up", and when he passed defendant in the hallway, defendant, without any provocation, called him "a dirty f'n pig".

The key defense witness was Connie Trinidad, a 23-year-old pregnant mother of four who was defendant's girlfriend at the time of the fire. She testified that her six-year-old son Ralph started the fire by igniting a mattress while playing with a candle and matches. She tried to put out the fire with a pair of jeans, but when she could not, she panicked. She took Ralph and her two-year-old daughter to a street phone booth and called defendant, who lived at least five blocks away, to come over and help her extinguish the fire. Defendant came to help, and they began arguing because defendant "was telling me that it was a thousand times that he told me about my son because as I said before, this is not the first time". At one point defendant shouted with references to Ralph "he's going to burn the f**king building down". Defendant never hit her and her shouting about being left alone was because she was tired of arguing. The crashing sound was because the lights in the apartment were out and she knocked over a table while going to the kitchen for water to put out the fire. Her face was bruised because she banged her head on something while running around in the dark apartment, and because she had been in a fight the previous week with a woman she did not know. Trinidad conceded that on the day of the fire she had informed the Assistant District Attorney that she was so high on the night of the fire she could not remember how it started. Trinidad also asserted that the Assistant District Attorney had offered her furniture, clothing, money, and a trip back to her home state of Alaska to help her prosecute defendant.

Defendant argues on appeal that the trial court abused its discretion by not permitting him to produce five witnesses to testify that they had observed six-year-old Ralph Trinidad set fires on other occasions. It is also noted that Connie Trinidad was not permitted to testify that she had sought psychiatric help for her son. In making these rulings the trial court ascertained that there were no specific records which indicated that Ralph had set other fires and no proof with regard to the psychiatric care other than Connie Trinidad's testimony. It is further noted that despite these rulings, the defense sought to convey to the jury that this was not Ralph Trinidad's first connection with a fire. Connie Trinidad testified that this was not the first time Ralph had played with matches, and an objection was sustained. She also testified she did not call the fire department because she did not want them to discover her son had set the fire. Trinidad was asked if she had ever taken Ralph to a doctor to

help him, and if she had ever sought psychiatric help for him, and objections to both questions were sustained. During summation, defense counsel argued "It's hard to put ourselves into Ralph Trinidad's mind. I think you know, though; I think you can understand that Ralph Trinidad is not a normal little boy." An objection was again sustained. As previously noted, Connie Trinidad did testify at one point that "this is not the first time".

Due process requires that a criminal defendant be permitted to call witnesses in his own behalf, and a defendant also has the right to introduce evidence that a person other than himself committed the crime (*Chambers v Mississippi,* 410 US 284). The evidence introduced, however, must do more than raise a mere suspicion that it was a different person that committed the crime. There must be a clear link that establishes that it was another that committed the crime (*State v Harman,* 270 SE2d 146 [W Va]; *Brown v United States,* 409 A2d 1093 [DC]); *State v Williams,* 575 SW2d 838 [Mo App]; *Fortson v State,* 269 Ind 161, 379 NE2d 147; *Commonwealth v Graziano,* 368 Mass 325, 331 NE2d 808; *Hale v United States,* 25 F2d 430). As stated in *Greenfield v People* (85 NY 75, 90): "While evidence tending to show that another party might have committed the crime would be admissible, before such testimony can be received there must be such proof of connection with it, such a train of facts or circumstances as tend clearly to point out some one besides the prisoner as the guilty party. Remote acts, disconnected and outside of the crime itself, cannot be separately proved for such a purpose".

The trial court did not abuse its discretion by not permitting defendant to call witnesses to testify that on other occasions Ralph Trinidad had set fires.

"A general rule of evidence, applicable in both civil and criminal cases, is that it is improper to prove that a person did an act on a particular occasion by showing that he did a similar act on a different, unrelated occasion. (See Richardson, Evidence [10th ed], §§ 170, 184)" (*Matter of Brandon,* 55 NY2d 206, 210-211).

"Evidence of the collateral act is excluded because its relevancy, being predicated solely on similarity, is slight and because its admission would tend to confuse the issue, mislead the jury" (Richardson, Evidence § 184 [Prince 10th ed]; *see, Noyes v Boston & M.R.R.,* 213 Mass 9, 99 NE 457; *Brownhill v Kivlin,* 317 Mass 168, 57 NE2d 539).

Furthermore, as stated in *People v Davis* (43 NY2d 17, 27, *cert denied* 435 US 998): "Relevant evidence means 'evidence having any tendency to make the existence of any fact that is of

consequence to the determination of the action more probable or less probable than it would be without the evidence' (Uniform Rules of Evidence, rule 401 [1974]). It tends to convince that the fact sought to be established is so (*People v Yazum,* 13 NY2d 302, 304). Relevance, however, is not always enough, since 'even if the evidence is proximately relevant, it may be rejected if its probative value is outweighed by the danger that its admission would prolong the trial to an unreasonable extent without any corresponding advantage; or would confuse the main issue and mislead the jury; or unfairly surprise a party; or create substantial danger of undue prejudice to one of the parties' (Richardson, Evidence [Prince — 10th ed], § 147, p 117; see, also, *People v Harris,* 209 NY 70, 82; McCormick, Evidence [2d ed], § 185, pp 438-440)".

Testimony that Ralph Trinidad was a troubled child who had set fires on other occasions was merely collateral to the issue of defendant's guilt. Such collateral evidence, by its very nature, is of limited probative value, and in light of Connie Trinidad's improbable testimony, which was severely impeached, and which was contrary to the physical evidence of how the fire started, its probative value was of an even more negligible significance. We also note that despite the trial court's ruling, the defense was able to convey to the jury that this was not the first problem Ralph had with starting fires. In conclusion, we find no abuse of discretion here because the probative value of the offered testimony was outweighed by the danger that its introduction would prolong the trial to an unreasonable extent without any corresponding advantage, and because the proof would not have provided a clear link to Ralph Trinidad as the arsonist.

Accordingly, the judgment of conviction should be affirmed. Lazer, J. P., Thompson, Weinstein and Eiber, JJ., concur.