Marvin **WADE**, Petitioner–Appellant,

v.

Dominic **MANTELLO**, Superintendent, Coxsackie Correctional Facility, Respondent–Appellee.

**Docket No. 02–2359.**

United States Court of Appeals, Second Circuit.

Argued: Feb. 20, 2003.

Decided: June 13, 2003.

Andrew E. Abraham, Legal Aid Society, Criminal Appeals Bureau, Brooklyn, NY, for Petitioner–Appellant.

Leonard Joblove, Assistant District Attorney (Joseph Huttler, Assistant District Attorney, on the brief), for Charles J. Hynes, District Attorney, Kings County, Brooklyn, NY, for Respondent–Appellee.

Before: OAKES, KEARSE, and B.D. PARKER, Jr., Circuit Judges.

B.D. PARKER, JR., Circuit Judge

Petitioner-appellant Marvin Wade appeals from the denial of his petition for a writ of habeas corpus by the United States District Court for the Eastern District of New York (Edward R. Korman, *Chief Judge*). Wade was convicted of the murder of Emmanuel ("Manny") Bryant in New York Supreme Court, Kings County, in 1995. He was granted a Certificate of Appealability on the issue of whether he was deprived of his right to present a complete defense when the trial court excluded testimony that the victim had been involved in a shooting with another individual several weeks prior to the murder. On direct appeal, the New York Appellate Division concluded that the testimony had been properly excluded and, consequently, that the exclusion did not violate the Constitution. Because we believe this determination was not an objectively unreasonable application of federal law, we affirm. *See* 28 U.S.C. § 2254(d)(1).

## BACKGROUND

### I. Wade's Trial

The testimony at Wade's trial established that on October 26, 1994, Manny Bryant was shot and killed in the J&J dry cleaners in Brooklyn, New York. Bryant and an acquaintance, Robert Jones, had gone to the cleaners to collect clothing left by Bryant. The owner testified that as he was retrieving Bryant's clothes from the rear of the store, he heard gunshots, ran to the foyer, saw Bryant on the ground, and called the police.

At trial, two witnesses identified Wade as the shooter: Randy Roman and Robert Jones. The first to testify, thirty-five-year-old Randy Roman, was an admitted alcoholic and one-time heroin addict, with a lengthy criminal history.[1] Roman testified that on the day of the murder he was standing with friends near the dry cleaners, drinking heavily. He heard three or four gunshots, looked around and saw a man walking towards him with a gun in his hand, approximately sixteen feet away. Roman fled the scene but later contacted the investigating officers and gave an account of what he had observed. Eventually the officers went to Roman's home and showed him a photographic array, which included photographs of Wade and Jones. Although Roman testified that he recognized the man with the gun in the array, he did not immediately mention this to the officers but later contacted the police and identified Wade.

Jones testified that, on the day of the murder, he was conversing with a friend near the dry cleaners and was approached by Bryant, who asked Jones to accompany him to the cleaners. Jones agreed and the two men walked into the store. While in the store with Bryant, Jones observed a man coming from a nearby housing complex wearing a "black hoody [hooded

---

1. Roman testified that since 1984, when he overcame his heroin habit by turning to alcohol, he had had a drink every day. On the day of his testimony at trial, however, Roman stated that he had not had a drink because of doctor's instructions accompanying ulcer medication he had been given the day before.

sweatshirt], ... black Army pants, black boots and a black hat," which was covering his face. Upon entering the store, the individual lifted the black hat, at which point Jones recognized Wade, whom he had known for approximately six months and had seen frequently. According to Jones, Wade then pulled a gun and repeatedly shot Bryant. After the shooting began, Jones pushed past Wade and ran out of the store. Several days later, Jones was questioned by the police and implicated Wade. After Wade's arrest, he was shown in a line-up at which Roman identified Wade as the man he had seen with a gun and Jones identified Wade as the shooter.

## II. The Defense Case

Wade advanced essentially two defenses: he attempted to establish an alibi and he attempted to suggest that another individual—a gang member named Gene—had a motive to kill Bryant and that Jones was intimidated by the gang to which Gene belonged into falsely implicating Wade. Wade's attempt to present the latter theory was unsuccessful, however, largely because the trial court excluded testimony by a defense witness, which, Wade claims, would have established Gene's motive. This evidentiary ruling is the basis of Wade's habeas petition and the issue on this appeal.

On cross-examination, Jones testified to the existence of a gang called the "Paradise gang" operating in the area. Jones was asked whether Bryant was a member of the gang, whether a person named Gene was a member of the gang, and whether Jones was physically attacked by members of the gang the night after the murder, but the court sustained objections to these questions. After discussion at side-bar, however, the court allowed defense counsel to elicit that Jones was attacked by mem-

bers of the Paradise gang the night after the murder. The court also permitted defense counsel to cross-examine Jones about whether Bryant was a member of the Paradise gang or had recent problems with Gene, allegedly a high-ranking member of the gang. But Jones denied knowing whether Bryant was a member of the gang or was having any problems with its members.

After Jones's testimony, but before the defense's case, the court ruled that, absent a more compelling offer of proof, it would not permit further comment on Bryant's alleged membership in the Paradise gang or argument that another person committed the crime:

> The fact he might have belonged to a gang is not really relevant.... And I won't allow you to comment on it.... There is nothing else I would permit you to say regarding that, as far as any other evidence that there might have been another person who killed him. There is nothing to connect his connection with the gang with someone else committing this crime. Nothing at all. It is all speculative and irrelevant... [U]nless you can make an offer of proof, then, of course, it may not remain that way. If you have evidence connecting someone else with the commission of this crime, then maybe I will.

(Tr. at 810–11)

In response, defense counsel indicated, referring to Darryl Folk, one of Wade's alibi witnesses, that she had a witness "who observed the deceased having problems with the gang," implying that another person had a motive to kill Bryant. The court ruled, however, that this proffer was insufficient:

> The fact that the deceased might have had problems with the gang is irrelevant. You still have nothing to connect, and the cases are legion in this area.

You have to show a clear connection between your evidence and the fact that someone else might have committed this crime. . . . Motive is not sufficient. You have to have clear, or evidence making a clear connection. . . . I will tell you right now I won't let you do it. Unless, as I said, you can offer proof, or have an offer of proof which shows a clearer connection than you have right now.

(Tr. at 811–12).

Notwithstanding this ruling, defense counsel asked Folk on direct examination whether he had witnessed Bryant "having any trouble with anybody from the Paradise gang." When the court precluded this question, defense counsel proffered that Folk would testify that three to four weeks before the murder, Folk had observed a shoot-out between Bryant and Gene. The prosecutor argued, and the court agreed, that the testimony was inflammatory and irrelevant. At the conclusion of trial, the jury found Wade guilty of second-degree murder. He was sentenced to a term of imprisonment of twenty-five years to life.

### III. Appeal and Habeas

On direct appeal, Wade argued that by precluding Folk's testimony, the court violated Wade's right under the New York and federal constitutions to present a complete defense. The Appellate Division, however, affirmed Wade's conviction, holding that

[t]he trial court did not improvidently exercise its discretion by limiting the defendant's examination of one of his witnesses. Even though a defendant has a right to introduce evidence that a person other than himself committed the

crime (*see, Chambers v. Mississippi,* 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297), the evidence must do more than raise a mere suspicion that another person committed the crime. In this case, the defendant failed to show a clear link between the third party and the crime. [citations omitted].

*People v. Wade,* 245 A.D.2d 473, 666 N.Y.S.2d 467, 468 (1997).

Wade sought, but was denied, leave to appeal to the New York Court of Appeals. *People v. Wade,* 92 N.Y.2d 862, 677 N.Y.S.2d 93, 699 N.E.2d 453 (1998). Wade filed a petition for a writ of habeas corpus, again arguing that the trial court's ruling violated his right to present a complete defense, as did the Appellate Division's reliance, in rejecting his appeal, upon the "clear link" test for the admission of evidence of third-party culpability.

While his petition was pending, the New York Court of Appeals granted leave to appeal in *People v. Primo,* 270 A.D.2d 291, 704 N.Y.S.2d 112 (2000), leave granted, 95 N.Y.2d 907, 716 N.Y.S.2d 648, 739 N.E.2d 1153 (2000), which presented the question of the appropriateness of the "clear link" test. The district court, consequently, reserved decision on the habeas petition pending the state court's decision. In June 2001, the New York Court of Appeals issued its decision in *Primo,* in which it concluded that the " 'clear link' phraseology" does not "best articulate[ ] the standard that should govern the admissibility of evidence of third-party culpability" and that instead "the test is better described in terms of conventional evidentiary principles." *People v. Primo,* 96 N.Y.2d 351, 355, 728 N.Y.S.2d 735, 753 N.E.2d 164 (2001).[2] "To the extent that the 'clear link'

**2.** In describing these conventional evidentiary principles, the court stated:

As a general rule, evidence is relevant if it tends to prove the existence or nonexistence of a material fact, i.e., a fact

standard implies no more than an abbreviation for the conventional balancing test," the *Primo* court noted, "it presents no problem." *Id.* at 356, 728 N.Y.S.2d 735, 753 N.E.2d 164. A review of the application of this standard by the New York Appellate Divisions led the court to the conclusion that the lower courts would generally have reached the same ruling no matter the nomenclature used. But because of the possibility that it could "be easily misread as suggesting that evidence of third-party culpability occupies a special or exotic category of proof," the court determined that "clear link," and similar coinages, should be abandoned. *Id.*

Encouraged by this decision and seeking fully to exhaust available state remedies, Wade moved in the Appellate Division for leave to reargue his appeal, but this was denied. Wade sought reconsideration by the New York Court of Appeals, but this too was denied. *People v. Wade*, 96 N.Y.2d 942, 733 N.Y.S.2d 383, 759 N.E.2d 382 (2001).

The district court then denied Wade's petition. The court identified the determinative question to be whether "there[ was]

a reasonable probability that the outcome [of the trial] would have been different if the testimony about the shootout had not been excluded."[3] (Tr., May 1, 2002, at 7). After discussing the evidence presented at trial, the court observed that, had it been the trial judge, it would have admitted the testimony, but nevertheless concluded:

> Looking at the entire record in a realistic way, including the questions that were asked by the jurors, the prosecution's case, the defense case, I think that there is no reasonable probability that the outcome would have been different had this testimony been admitted.[4]

(*Id.* at 14).

We agree with the district court's conclusion and affirm, but on a somewhat different rationale.

## DISCUSSION

### I. Standard of Review

■ We review *de novo* the district court's denial of the petition. *Washington v. Schriver*, 255 F.3d 45, 52 (2d Cir.2001). As Wade's claim was rejected on the mer-

---

directly at issue in the case. Relevant evidence, however, is not necessarily admissible. A court may, in its discretion, exclude relevant evidence if its probative value is outweighed by the prospect of trial delay, undue prejudice to the opposing party, confusing the issues or misleading the jury. Evidence of merely slight, remote or conjectural significance will ordinarily be insufficiently probative to outweigh these countervailing risks.
*Primo*, 96 N.Y.2d at 355, 728 N.Y.S.2d 735, 753 N.E.2d 164 (internal quotation and citations omitted). These evidentiary principles, applied by New York courts, are essentially identical to those codified in the Federal Rules of Evidence. *See* Fed. R. of Evid. 401, 402, 403.

3. The district court gleaned this test for determining whether a trial court's exclusion of defense evidence violates the constitution

principally from the Supreme Court's decision in *Kyles v. Whitley*, 514 U.S. 419, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995), a case involving the prosecution's duty to disclose evidence favorable to a defendant under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The court also noted what it considered to be another formulation of this test from *Justice v. Hoke*, 90 F.3d 43 (2d Cir.1996), a case involving exclusion of defense evidence. *See infra.*

4. The court also discussed the repudiation of the clear-link test by the New York Court of Appeals in *Primo*. Although not convinced that *Primo* did not effect a change in the law, the court observed that to the extent the clear-link standard was no more than shorthand for the conventional balancing test for weighing the admissibility of evidence, it presented no constitutional problem.

its by the Appellate Division, under the Antiterrorism and Effective Death Penalty Act ("AEDPA") he may be granted habeas relief only if the decision "was contrary to, or involved an unreasonable application of," clearly established federal law as determined by the Supreme Court. 28 U.S.C. § 2254(d)(1).[5]

■ Under the "contrary to" clause, Wade may be granted a writ only if the state court arrived at a conclusion "opposite to that reached by [the Supreme] Court on a question of law or ... decide[d][the] case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor,* 529 U.S. 362, 412–13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). In conducting the "unreasonable application" inquiry, we consider " 'whether the state court's application of clearly established federal law was objectively unreasonable.' " *Jones v. Stinson,* 229 F.3d 112, 119 (2d Cir.2000) (quoting *Williams,* 529 U.S. at 409, 120 S.Ct. 1495). An "objectively unreasonable" application falls somewhere between "merely erroneous and unreasonable to all reasonable jurists." *Francis S. v. Stone,* 221 F.3d 100, 109 (2d Cir.2000).

## II. Application

### A. Clearly Established Federal Law

■ Our first consideration is whether Wade's claim that the trial court's exclusion of Folk's testimony violated his right to present a complete defense is based on "clearly established Federal law," as determined by the Supreme Court. 28 U.S.C. § 2254(d)(1); *see Sellan v. Kuhlman,* 261 F.3d 303, 309 (2d Cir.2001). Supreme Court precedent makes clear that a criminal defendant is entitled by the Constitu-

tion to a meaningful opportunity to present a complete defense. *See Jones,* 229 F.3d at 120 (citing *Crane v. Kentucky,* 476 U.S. 683, 690, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986); *Rock v. Arkansas,* 483 U.S. 44, 51–53, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987)). "The right to call witnesses in order to present a meaningful defense at a criminal trial is a fundamental constitutional right secured by both the Compulsory Process Clause of the Sixth Amendment and the Due Process Clause of the Fourteenth Amendment." *Schriver,* 255 F.3d at 56 (citing, among other authorities, *Chambers v. Mississippi,* 410 U.S. 284, 294, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973)); *see also Chambers,* 410 U.S. at 302, 93 S.Ct. 1038 ("Few rights are more fundamental than that of an accused to present witnesses in his own defense.").

■ Accordingly, a state is not free to apply arbitrary rules of competence to prevent a material witness from testifying for the defense, nor may it "apply a rule of evidence that permits a witness to take the stand, but arbitrarily excludes material portions of his testimony." *Rock,* 483 U.S. at 55, 107 S.Ct. 2704. As the Court has observed on more than one occasion, " 'at a minimum, ... criminal defendants have the right ... to put before a jury evidence that might influence the determination of guilt.' " *Taylor v. Illinois* 484 U.S. 400, 408, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988) (quoting *Pennsylvania v. Ritchie,* 480 U.S. 39, 56, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987)).

The Supreme Court has found unconstitutional the rigid application of state evidentiary rules prohibiting presentation of defense evidence of *third-party culpability.* In *Chambers,* for example, the defendant (Chambers) was tried for a murder to

---

**5.** Wade does not contend that the Appellate Division's adjudication "resulted in a decision that was based on an unreasonable determi-

nation of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

which another individual (McDonald) had repeatedly confessed. But the trial court's mechanical application of the hearsay rule, coupled with Mississippi's "voucher" rule, which prohibited the defense from cross-examining McDonald because it had called him as a witness and thereby "vouched" for his credibility, effectively precluded Chambers from introducing evidence of these confessions. The Court found that the trial court's application of the hearsay rule to exclude testimony by defense witnesses about McDonald's confessions, "coupled with the State's refusal to permit Chambers to cross-examine McDonald, denied him a trial in accord with traditional and fundamental standards of due process." *Chambers*, 410 U.S. at 302, 93 S.Ct. 1038.

■ A defendant's right to present relevant evidence is not, however, unlimited; rather it is subject to "reasonable restrictions." *United States v. Scheffer*, 523 U.S. 303, 308, 118 S.Ct. 1261, 140 L.Ed.2d 413 (1998). Central among these restrictions are state and federal rules of procedure and evidence "designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *Chambers*, 410 U.S. at 302, 93 S.Ct. 1038; *see also Crane*, 476 U.S. at 690, 106 S.Ct. 2142. The power of courts to exclude evidence through the application of evidentiary rules that serve the interests of fairness and reliability is well-settled. *See Taylor*, 484 U.S. at 410, 108 S.Ct. 646 ("The accused does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence.").

■ In light of these principles, we readily conclude that Wade's claim is based upon clearly established federal law, as determined by the Supreme Court. The Constitution protects a criminal defendant from the arbitrary exclusion of mate-rial evidence, and evidence establishing third-party culpability is material. We must therefore proceed to consider whether the state court's decision was "contrary to" or "an unreasonable application of" this clearly established law.

## B. Contrary to or Unreasonable Application of

■ With respect to the first prong of the AEDPA standard, we note that, although Supreme Court precedent clearly establishes the general contours of a criminal defendant's right to present potentially exculpatory evidence, the Court has not articulated the specific set of circumstances under which a criminal defendant must be permitted to introduce evidence of potential third-party culpability. Instead the Court has found that such evidence must be admitted when, under the "facts and circumstances" of the individual case, its exclusion deprived the defendant of a fair trial. *Chambers*, 410 U.S. at 303, 93 S.Ct. 1038. In adjudicating Wade's claim, the Appellate Division, acknowledging a criminal defendant's general right to present a defense, did not reach a different conclusion than the Supreme Court on a question of law. Nor has the Court arrived at a decision different from the Appellate Division's on "materially indistinguishable" facts. Accordingly, we conclude that the state court's decision was not "contrary to" Supreme Court precedent. *See Williams*, 529 U.S. at 412–13, 120 S.Ct. 1495.

■ Turning to the second prong of the AEDPA standard, we consider whether the Appellate Division's decision constituted an "unreasonable application of" clearly established federal law governing a criminal defendant's right to present a complete defense. As the district court correctly observed, in determining whether the exclusion of defense evidence violated this right,

we have previously considered on several occasions the determinative question to be whether the omitted evidence would have created reasonable doubt. In *Justice v. Hoke*, 90 F.3d 43 (2d Cir.1996), for example, a pre-AEDPA case upon which the district court relied, we granted habeas relief based on a trial court's evidentiary rulings that effectively prohibited the defense from attacking the credibility and factual account of the sole prosecution witness. We held that whether the exclusion of the defense witnesses' testimony violated Justice's right to present a defense "depends upon whether 'the omitted evidence [evaluated in the context of the entire record] creates a reasonable doubt that did not otherwise exist' " and concluded that it did. *Justice*, 90 F.3d at 47 (quoting *United States v. Agurs*, 427 U.S. 97, 112, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976) (alteration in *Justice*)).

This test applies post-AEDPA. In *Jones v. Stinson*, 229 F.3d 112 (2d Cir. 2000), for example, Jones was convicted of selling three vials of a controlled substance, which combined contained a minuscule amount (one grain) of cocaine. Jones claimed that he did not have the requisite criminal intent because he meant only to sell "beat," i.e., fake, crack cocaine. We concluded that the trial court's preclusion of Jones's testimony that he had previously been arrested several times for selling a controlled substance but released each

time after laboratory tests revealed that the substance in the vials did not contain cocaine, did not warrant habeas relief because

> [a]ssuming that the testimony should have been admitted and that its exclusion was clear error, viewing the record as a whole, we cannot conclude that it would so certainly have created new ground for reasonable doubt that the appellate division's decision [that the exclusion was not constitutional error] was objectively unreasonable.

*Id.* at 120.[6]

In light of this precedent, the district court's approach was understandable; yet it glossed over a more elementary concern, which, in this case, we find to be ultimately dispositive, namely: the propriety of the trial court's evidentiary ruling. Although a focus on the materiality of excluded testimony in the context of the entire record is ultimately necessary before it may be determined that a trial court's exclusion of evidence amounts to constitutional error warranting habeas relief, *see, e.g., Jones*, 229 F.3d at 120; *Schriver*, 255 F.3d at 59, that inquiry may be premature if the trial court's ruling was proper.[7]

This approach is particularly appropriate in this case. Under AEDPA, we must conduct a deferential review of the Appellate Division's decision, which resolved the

---

**6.** Again, in *Schriver*, 255 F.3d 45, although applying the pre-AEDPA standard, we held that the state trial court's exclusion of expert testimony concerning the suggestibility of small children, in a case involving the sexual abuse of a child, was not constitutional error because the "admission of the testimony would not have created an 'otherwise nonexistent' reasonable doubt about the petitioner's guilt." *Id.* at 60 (quoting *Jones*, 229 F.3d at 120).

**7.** This is, in fact, what occurred in *Justice, Jones*, and *Schriver*. In each of these cases,

before considering whether the trial court's ruling was constitutional error, we first considered whether the ruling was erroneous. *See Justice*, 90 F.3d at 48–50 (finding that excluded evidence was "relevant and competent" and that there was no basis for its exclusion as circumstantial); *Jones*, 229 F.3d at 120 (assuming that exclusion of testimony was clear error, because "[u]nder either state or federal evidence law, the trial court probably should have admitted" it); *Schriver*, 255 F.3d at 57–59 (rejecting trial court's reasons for exclusion of expert testimony).

constitutional claim on the merits. The Appellate Division rejected Wade's claim not because the excluded evidence, if admitted, would not have created reasonable doubt, but because it found that the trial court properly excluded the testimony. Consequently, habeas relief may not be granted unless this determination was objectively unreasonable.

Moreover, the type of evidentiary ruling challenged in this case is afforded wide latitude by the Constitution. In evaluating claims of violation of the right to present a complete defense, the Supreme Court has found the Constitution to be principally (but not always) concerned with state evidentiary rules leading to the "blanket exclusion," *Crane*, 476 U.S. at 690, 106 S.Ct. 2142, of categories of evidence when their application is "'arbitrary' or 'disproportionate to the purposes the [rules] are designed to serve.'" *Scheffer*, 523 U.S. at 308, 118 S.Ct. 1261 (quoting *Rock*, 483 U.S. at 56, 107 S.Ct. 2704). Rather than involving the application of such a rule, the ruling at issue is one of those "ordinary evidentiary rulings by state trial courts" concerning the admissibility of evidence, upon which the Court is "traditional[ly] reluctan[t] to impose constitutional constraints." *Crane*, 476 U.S. at 689, 106 S.Ct. 2142.

> In any given criminal case the trial judge is called upon to make dozens, sometimes hundreds, of decisions concerning the admissibility of evidence. As we reaffirmed earlier this Term, the Constitution leaves to the judges who must make these decisions "wide latitude" to exclude evidence that is "repetitive ..., only marginally relevant" or poses an undue risk of "harassment, prejudice, [or] confusion of the issues."

*Id.* at 689–90, 106 S.Ct. 2142 (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986) (alterations in *Crane*)).

The trial court excluded Folk's testimony because it determined that the testimony was largely irrelevant and that any marginal relevance was outweighed by dangers of juror prejudice and confusion. After defense counsel questioned Jones concerning Bryant's gang membership and problems with gang members, the court ruled that, absent a satisfactory offer of proof, it would not permit further testimony regarding Bryant's gang associations because such evidence was "speculative and irrelevant." Later, the court entertained defense counsel's offer of proof concerning Folk's testimony that he had witnessed a shoot-out between Bryant and Gene but agreed with the prosecution that the proposed testimony was irrelevant and inflammatory.

That a third party may have borne animus towards the victim, standing alone, does little to establish that the third party committed the crime. *See United States v. Diaz*, 176 F.3d 52, 82 (2d Cir.1999) (finding that claim that court erroneously excluded evidence that murder victim had assaulted inmate while in jail, which suggested motive by a third party, "was creative conjecturing and the court properly exercised its discretion in excluding such speculative evidence"). Folk's testimony would at most have suggested that a third party had motive to murder Bryant, but neither the testimony nor the defense proffer tended to show that this third party had the *opportunity* to commit the murder. And even if opportunity could be inferred, nothing linked this third party to Bryant's murder. Accordingly, Folk's testimony would not have materially assisted the determination of Wade's guilt or innocence. *See DiBenedetto v. Hall*, 272 F.3d 1, 8 (1st Cir.2001) ("Evidence that tends to prove a person other than the defendant commit-

ted a crime is relevant, but there must be evidence that there is a connection between the other perpetrators and the crime, not mere speculation on the part of the defendant.").

Wade contends that Folk's testimony was relevant not merely because it would have tended to show third-party culpability but also because it would have undermined the testimony of Jones, the state's only compelling eyewitness. Wade argues that in light of the fact that Jones was assaulted by members of the gang the night after the murder (before he implicated Wade), evidence that a member of the gang bore animus toward Bryant may be said to have some probative value in establishing that Jones had motivation to fabricate his testimony.

But this theory rests on a series of inferences without a sufficient factual predicate. The defense proffered that three or four weeks before the murder, Folk witnessed a shoot-out between Bryant and Gene. No details were offered concerning the circumstances of this incident. From the fact of its occurrence, a juror would have had to conclude that three or four weeks later Bryant was killed by members of the gang to which Gene belonged, that Jones was assaulted to intimidate him, and that he implicated Wade because of this intimidation. Although Wade's attempt to put this testimony before the jury is understandable, the desired conclusion rests at the end of a brittle chain of inferences.[8]

Weighed against the limited probative value of the proffered testimony were dangers that the jury could have been misled or confused by the testimony. Although the trial court did permit limited inquiry into Bryant's, Jones's and Wade's gang associations, it was evidently concerned that allowing questioning into an event between the deceased and another individual occurring well before the murder, in the absence of any evidence linking the event to the murder, would invite testimony that was both distracting and inflammatory. Speculation into Bryant's gang associations and illicit activities posed a danger of turning attention away from issues of Wade's culpability to those of Bryant's character and propensity for violence.

The potential for speculation into theories of third-party culpability to open the door to tangential testimony raises serious concerns:

> In the course of weighing probative value and adverse dangers, courts must be sensitive to the special problems presented by "alternative perpetrator" evidence. Although there is no doubt that a defendant has a right to attempt to establish his innocence by showing that someone else did the crime, a defendant still must show that his proffered evidence on the alleged alternative perpetrator is sufficient, on its own or in combination with other evidence in the

---

8. Wade also argues that Folk's testimony would have bolstered his own credibility as an alibi witness. We note, first, that our focus on the propriety of the trial court's exclusion under conventional evidentiary principles makes this argument largely inapposite. Defense counsel did not urge the admission of Folk's testimony concerning the shoot-out because it would enhance his credibility as an alibi witness. This argument may be more pertinent if we determined that the trial court's exclusion was arbitrary and then, in considering whether it was constitutional error warranting habeas relief, we were to consider whether it would have changed the trial's outcome. In any event, the notion that the exclusion thwarted Folk from enhancing his credibility is dubious. The jury apparently found Folk willing to fashion a detailed story in order to protect his friend; it is rather unlikely that adding another element to this story would have changed the jury's perception of its veracity.

record, to show a nexus between the crime charged and the asserted "alternative perpetrator." It is not sufficient for a defendant merely to offer up unsupported speculation that another person may have done the crime. Such speculative blaming intensifies the grave risk of jury confusion, and it invites the jury to render its findings based on emotion or prejudice.

*United States v. McVeigh*, 153 F.3d 1166, 1191 (10th Cir.1998) (citation omitted).

In light of the limited relevance of the proposed testimony and the substantial countervailing dangers it posed, the trial court's decision to exclude it was not "arbitrary," *Scheffer*, 523 U.S. at 308, 118 S.Ct. 1261, under "standard rules of evidence" governing admissibility, *Taylor*, 484 U.S. at 410, 108 S.Ct. 646. The Appellate Division's determination that the trial court's evidentiary ruling did not violate Wade's right to present a defense was, therefore, not objectively unreasonable.

■ Wade contends, however, that in reaching this conclusion the Appellate Division relied on the discredited-and unconstitutional—"clear link" test. The effort of New York courts to develop a test for when a defendant's proffered evidence of third-party culpability is sufficiently probative to overshadow the dangers posed by its admission led to the development of the "clear link" and "clear connection" terminology. *See Primo*, 96 N.Y.2d 351, 728 N.Y.S.2d 735, 753 N.E.2d 164. We share the concern articulated by the New York Court of Appeals in *Primo* that this test may turn a showing of third-party culpa-

bility into an exotic category of proof, rather than simply encapsulating "conventional evidentiary principles." *Id.* at 355, 728 N.Y.S.2d 735, 753 N.E.2d 164. We doubt, although we have no occasion to decide it here, whether categorically requiring evidence of third-party culpability to meet a heightened showing of probity comports with the constitutional guarantee of the right to present a complete defense.

But this is not what occurred. Rather, although referring to the "clear link" and "clear connection" test, it is apparent that the trial court weighed the limited probative value of the testimony against the adverse dangers of its presentation to the jury—it, in other words, applied "standard rules of evidence" concerning admissibility, *Taylor*, 484 U.S. at 410, 108 S.Ct. 646— and concluded that the latter outweighed the former.[9] In light of the latitude afforded such rulings by the Constitution, *see Crane*, 476 U.S. at 689, 106 S.Ct. 2142; *Delaware*, 475 U.S. at 679, 106 S.Ct. 1431, the Appellate Division's conclusion that the exclusion did not offend Wade's constitutional right to present a complete defense is not an unreasonable application of clearly established federal law.

## CONCLUSION

The judgment of the district court is affirmed.

OAKES, Senior Circuit Judge, dissenting.

I am required to dissent.

The petitioner was deprived of his constitutional right to present a complete de-

---

**9.** It is, of course, impossible to penetrate the mind of the trial court in order to discover exactly what it meant by its reference to the clear-link test. Yet we are assured by the court's attention to the evidence's relevance, its extension of an opportunity to defense counsel to proffer some connection between the shoot-out and the murder, the flexibility it exhibited in adapting its rulings to the evidence adduced, and, finally, its expressed agreement with the prosecution's argument concerning the inflammatory and distracting nature of the testimony at issue, that the court is best understood to have applied conventional evidentiary principles in excluding the evidence.

fense. Wade was convicted of the murder of Manny Bryant in New York Supreme Court, Kings County, in 1995. But the trial court refused to permit a defense witness, Darryl Folk, to testify that he had seen Gene, a "high" member of the Paradise Gang, try to kill Manny Bryant some three or four weeks before Bryant was killed. This refusal occurred in the context of a trial in which, of the two prosecution witnesses who testified that Wade was the killer, one was a member of the Paradise Gang who was beaten up by the gang on the night after the Bryant shooting and the other was a drunk who had been drinking the day of the shooting and later dramatically changed his description of the shooter's build from "thin" to "chubby."

The trial court denied Wade the opportunity to present Folk's testimony on the ground that there was no "clear connection" between the shoot-out testimony and Bryant's murder. The appellate court based its denial of Wade's appeal on a long line of New York case law including, but not limited to, *People v. Aulet*, 111 A.D.2d 822, 490 N.Y.S.2d 567 (1985), which used the phrase "clear link" to describe the evidentiary showing necessary for admission of testimony on third-party culpability. The appellate court found that "in this case, the defendant failed to show a clear link between the third party [Folk] and the crime." *People v. Wade*, 245 A.D.2d 473, 666 N.Y.S.2d 467, 468 (1997).

The "clear link" phraseology has since been abandoned by the New York Court of Appeals in *People v. Primo*, 96 N.Y.2d 351, 355, 728 N.Y.S.2d 735, 738, 753 N.E.2d 164 (2001). There, the Court of Appeals held the standard governing the admissibility of evidence of third-party culpability is "better described in terms of conventional evidentiary principles," where relevant evidence may be excluded if its "probative value is outweighed by the prospect of trial delay, undue prejudice to the opposing party, confusing the issues or misleading the jury." *Id.*

In my view, the evidence of the shooting at Manny Bryant by Gene of the Paradise Gang had none of these effects. I therefore think the evidence, as contained in Folk's testimony, should have been admitted based on its probative value. I also note that the federal district judge who heard this habeas petition said that, had he been the trial judge, he would have admitted it.

The constitutional right to present a defense is clear and unequivocal, there being "few rights ... more fundamental than that of an accused to present witnesses in his own defense." *Chambers v. Mississippi*, 410 U.S. 284, 302, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973). The Compulsory Process Clause of the Fourteenth Amendment mandates that an accused may " 'put before a jury evidence that might influence the determination of guilt.' " *Taylor v. Illinois*, 484 U.S. 400, 408, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988) (quoting *Pennsylvania v. Ritchie*, 480 U.S. 39, 46, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987)). While the right to present evidence in one's defense is subject to "reasonable restrictions," *United States v. Scheffer*, 523 U.S. 303, 308, 118 S.Ct. 1261, 140 L.Ed.2d 413 (1998), I believe it was an unreasonable application of Supreme Court law in this case to exclude the highly relevant evidence of the victim's being shot at by a gang member only three to four weeks before the ultimate shooting, especially because one identifying witness was beaten up by the gang the day after the shooting and prior to identifying Wade as the killer. I would therefore grant Wade's petition for habeas corpus.