08-3539-pr
*Bell v. Ercole*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

## SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 4ᵗʰ day of March, two thousand and ten.

PRESENT: PIERRE N. LEVAL,
         CHESTER J. STRAUB,
         RICHARD C. WESLEY,
                  *Circuit Judges.*

---

GEORGE BELL,

                  *Petitioner-Appellant,*

         -v.-                                    08-3539-pr

ROBERT E. ERCOLE, Superintendent, Green Haven Correctional Facility,

                  *Respondent-Appellee.*

---

FOR APPELLANT:     KATHERYNE M. MARTONE, The Legal Aid
                   Society, Criminal Appeals Bureau, New
                   York, NY.

FOR APPELLEE:      LINDA CANTONI (John M. Castellano, *on the
                   brief*), *for* Richard A. Brown, District
                   Attorney, Queens County, Kew Gardens, NY.

Appeal from the United States District Court for the Eastern District of New York (Korman, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that the June 20, 2008 order of the United States District Court for the Eastern District of New York is **VACATED** and **REMANDED.**

Petitioner-Appellant George Bell appeals from an order of the United States District Court for the Eastern District of New York (Korman, *J.*), which denied his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  *See Bell v. Ercole*, No. 05 Civ. 4532, 2008 WL 2484585 (E.D.N.Y. June 20, 2008).  We presume the parties' familiarity with the underlying facts, the procedural history, and the issues presented for review.

Petitioner was convicted by a jury of, *inter alia*, first-degree murder relating to a double homicide and attempted robbery that occurred in Queens, New York on December 21, 1996.  The evidence at trial included, among other things:  (1) signed and videotaped confessions by

2

petitioner; (2) testimony from Gary Turnbull, a witness situated near the crime scene at the time of the homicides who later identified petitioner in a lineup; and (3) testimony from a "jailhouse informant" named Reginald Gousse, who cooperated with the prosecution and testified that petitioner confessed to the homicides while he was incarcerated awaiting trial. The matter was tried as a capital case, but the jury declined to impose the death penalty. Petitioner was ultimately sentenced to life in prison without the possibility of parole.

Petitioner raised four principal contentions in his federal habeas petition. First, he argued that unauthorized crime-scene visits by two jurors during the trial injected extra-record evidence into the deliberations that violated the Sixth Amendment. Second, petitioner asserted that erroneous evidentiary rulings at trial abridged his Sixth Amendment right to present a complete defense. Third, petitioner argued that the prosecution violated *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny by failing to disclose: (1) the full extent of its cooperation agreement with Gousse; and (2) that an individual named Jason Ligon had recanted his confession to participating in the

3

homicides.  Finally, petitioner contended that the prosecutor committed misconduct during his trial summation, which violated his due process rights.[1]

The district court rejected each of these arguments, and denied petitioner's request for an evidentiary hearing pursuant to 28 U.S.C. § 2254(e)(2).  With respect to the jurors' crime-scene visits, the district court held that "[t]he jury's exposure to extra-record information . . . was harmless under any standard." *Bell*, 2008 WL 2484585, at *8.  As to the trial court's evidentiary decisions, the district court found that the effect of the rulings did not warrant habeas relief, whether considered individually or collectively.  *See id.* at *25.  The district court was also unpersuaded by petitioner's *Brady* arguments.  *See id.* at

---

[1] In addition, petitioner argued that:  (1) the trial court's reasonable doubt instruction to the jury unconstitutionally diluted the prosecution's burden of proof; and (2) the trial judge violated petitioner's due process rights by refusing to afford his counsel an opportunity to be heard before the judge responded to a jury request for a read-back of the trial transcript.  The district court rejected both of these arguments and did not grant a certificate of appealability as to either argument. *Bell*, 2008 WL 2484585, at *35.  Petitioner's motion to expand the certificate of appealability to include these two arguments was denied on October 10, 2008 by a previous three-judge panel of this court.  *See* Dkt. No. 08-3539-pr, Order of Oct. 10, 2008.

4

*27.  Finally, the district court rejected petitioner's challenges to the prosecutor's summation, relying chiefly on the "invited response" doctrine, *United States v. Young*, 470 U.S. 1, 12-14 (1985), and a curative instruction issued by the trial court during closing arguments.  *See Bell*, 2008 WL 2484585, at *31.

The district court granted petitioner a certificate of appealability as to these four holdings, each of which petitioner challenges in this appeal.  *See id.* at *35.  Our standard of review is well-settled; we review the district court's decision *de novo* and its fact findings for clear error.  *E.g.*, *Garraway v. Phillips*, 591 F.3d 72, 75 (2010).  Similarly established are the broad standards governing a district court's consideration of a habeas petition pursuant to 28 U.S.C. § 2254 where, as here, the petitioner's claims were adjudicated on the merits in the state courts.  *E.g.*, *Hawkins v. Costello*, 460 F.3d 238, 242-44 (2d Cir. 2006).  Within the broader framework for review established by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), however, petitioner's myriad arguments present a complicated series of analytical questions.  For the reasons set forth below, because we are unsatisfied that the

5

district court properly addressed these issues, we vacate the order denying the petition and remand for further proceedings.

Our principal concern lies with the manner in which the district court resolved petitioner's challenges to the trial court's evidentiary rulings. In order to determine whether the effect of state-law evidentiary rulings can give rise to an "unreasonable application of [] clearly established Federal law," 28 U.S.C. § 2254(d)(1), a district court must first "start with 'the propriety of the trial court's evidentiary ruling.'" *Hawkins*, 460 F.3d at 244 (quoting *Wade v. Mantello*, 333 F.3d 51, 59 (2d Cir. 2003)). A trial court does not necessarily violate AEDPA by misapplying its state's evidentiary law, but "[t]he inquiry . . . 'into possible state evidentiary law errors at the trial level' assists . . . in 'ascertain[ing] whether the appellate division acted within the limits of what is objectively reasonable.'" *Id.* (alteration in original) (quoting *Jones v. Stinson*, 229 F.3d 112, 120 (2d Cir. 2000)).

In the context of challenged evidentiary rulings, the second analytical step depends on the district court's decision regarding whether the evidentiary ruling was

erroneous as a matter of state law.  If it was, then the next question for the district court is "whether 'the omitted evidence [evaluated in the context of the entire record] creates a reasonable doubt that did not otherwise exist.'"  *Justice v. Hoke*, 90 F.3d 43, 47 (2d Cir. 1996) (alteration in original) (quoting *United States v. Agurs*, 427 U.S. 97, 112 (1976)).  If, however, the challenged ruling was correct under state law, then the district court must ask whether the evidentiary rule that was applied is "arbitrary or disproportionate to the purposes it is designed to serve."  *Hawkins*, 460 F.3d at 245.

The district court failed to hew to this framework, which obscures our review of its decision.  The court identified eleven categories of evidentiary rulings challenged by petitioner.[2]  Within those categories, it is

---

[2] The categories of challenged rulings relate to the following evidence: (1) direct testimony and cross-examination relating to posters offering a reward for information about the homicides, *see Bell*, 2008 WL 2484585, at *10; (2) cross-examination of Assistant District Attorney Neil Morse regarding his recollection of petitioner's lineup, *id.* at *11; (3) testimony from petitioner's mother regarding his whereabouts on the morning of the homicides, *id.* at *12; (4) an audio-taped 911 telephone call by an eyewitness who testified at trial, *id.* at *13; (5) excluded expert testimony relating to false confessions coerced by non-physical means, *id.* at *14; (6) testimony relating to petitioner's I.Q. and educational history, *id.* at *18; (7)

7

not clear how many state-law errors the district court found. For example, with respect to the trial court's exclusion of testimony from petitioner's mother relating to his whereabouts on the morning of the homicides, the district court found that there was "*arguably* some merit to the argument that the trial judge abused his discretion." *Bell*, 2008 WL 2484585, at *12 (emphasis added). Similarly, as to the exclusion of testimony relating to petitioner's educational history, the district court reasoned that "[i]t is not clear from the record why this evidence was excluded at trial." *Id.* at *18. However, with respect to each of the challenged rulings, it was incumbent upon the district court to address the proprietary of the trial court's decision and then to analyze the effect of that decision under the framework described above. In these respects, we find the district court's analysis lacking. Therefore, one

cross-examination of Detective Louis Pia relating to his experience in law enforcement, *id.* at *20; (8) testimony from Mendez Collier regarding his observations of petitioner while he was at the police precinct after they were arrested, *id.* at *21; (9) testimony relating to the investigation and arrest of Jason Ligon, *id.* at *22; (10) testimony and cross-examination relating to the sentencing exposure of Reginald Gousse, *id.* at *23; and (11) testimony and cross-examination relating to Gousse's access, while in prison, to petitioner's court documents and case-related press clippings, *id.* at *24.

8

of the purposes of our remand is to permit the court to properly analyze individually the challenged rulings.

We are also unsatisfied with the district court's analysis of the collective effect on petitioner's trial of the challenged evidentiary rulings. Although the district court noted that petitioner's argument "relies on the[] cumulative effect" of these rulings, *id.* at *9, the court devoted the vast majority of its discussion to a somewhat-ambiguous analysis of the individual impact of each decision. After performing that analysis, the court held that it could not "conclude on this record that the whole is greater than the sum of its parts" because:

> Some of the erroneous rulings were not significant in terms of their impact on the trial. Others were harmless because other evidence was admitted that made up for the evidence that was excluded, and others were ultimately overcome by the corroboration provided by the cumulative effect of other evidence in the case. Moreover, not all of the rulings were erroneous, even though I rejected petitioner's arguments on the alternative ground that the errors were harmless.

*Id.* at *25.

Here again, we find ourselves unable to analyze the district court's conclusion because of the vagueness in its reasoning. The first shortcoming of this analysis results from the court's failure to specify which of the following

9

self-identified classes each ruling fell into: (1) "erroneous rulings" that did not have a "significant . . . impact on the trial"; (2) errors rendered harmless "because other evidence was admitted that made up for the evidence that was excluded"; (3) errors that were "ultimately overcome" by the "cumulative effect of other evidence in the case"; or (4) rulings that were assumed to be erroneous in order to proceed to harmless error analysis. *Id.* The district court also failed to consider whether the prosecutor's summation "sharpened the prejudice" that resulted from the challenged rulings. *Jenkins v. Artuz*, 294 F.3d 284, 294 (2d Cir. 2002). Therefore, the second purpose of our remand is to allow the district court to clarify its analysis of the aggregate impact of the challenged evidentiary rulings on petitioner's trial.

One final aspect of the district court's ruling requires further analysis upon remand. Several times in the decision, when performing harmless error analysis, the district court suggested that the jury was privy to the "confession of an accomplice." *See, e.g.*, *Bell*, 2008 WL 2484585, at *11 ("[I]t was unlikely that the jury would discredit Turnbull's identification as a lie in order to

obtain a reward, when [petitioner] had previously confessed and *had been implicated in a confession of an accomplice*." (emphasis added)); *id.* at \*18 ("[A]s a practical matter, it is virtually impossible for a defendant to succeed in persuading a jury that his confession, corroborated by an eyewitness identification, *the confession of an accomplice*, and by other circumstantial evidence, was untrue without taking the stand and explaining why he confessed." (emphasis added)). The accomplice confession referenced by the district court was not explicitly presented to the jury, as it would have violated *Bruton v. United States*, 391 U.S. 123 (1968). *See Bell*, 2008 WL 2484585, at \*2 n.1. However, the district court took the view that Lieutenant Nevins' testimony conveyed to the jury an "implicit" accusation by Mark Bigweh against petitioner. On remand the district court should clarify the evidentiary basis for the "confession of an accomplice" that it referenced, and describe the weight that this "confession" received in its harmless error analysis.

Moreover, if the district court continues to rely on the accomplice confession in its harmless error analysis, it should address the following. Had the prosecution attempted

to adduce evidence that Bigweh confessed and named Bell as an accomplice, this evidence would have been objectionable as hearsay and under *Bruton*. Upon reviewing the record, insofar as it was cited by the district court, it is debatable whether there was a basis for such objections. On the one hand, it could be argued that the prosecution only elicited testimony from Lieutenant Nevins that Bigweh "had information," Tr. 11690, and helped the police find Bell, Tr. 11659-68. In its harmless error analysis, however, the district court seems to have reasoned that the jury heard evidence of an accomplice's confession implicating Bell, to which Bell failed to object. *See, e.g.*, *Bell*, 2008 WL 2484585, at *2 n.1, *11. It might be argued that, in doing so, the district court: (1) considered evidence that the prosecution could not — and, arguably, did not — elicit under *Bruton*; and (2) faulted petitioner for failing to raise an objection to evidence that was not admitted at trial. On the other hand, one might argue that the jury did hear an implicit accusation by an accomplice implicating Bell, to which defense counsel failed to object, because the jury heard that: (1) Bigweh had information about the crime, Tr. 11690, and was involved in the crime, Tr. 11829,

12

11964-65; (2) Detective Nevins, as a result of meeting with Bigweh, convened a "tactical meeting" to "apprehend an individual," Tr. 11659; (3) Detective Nevins then staked out Bell's home, Tr. 11662, "apprehended" Bell, "[p]laced him against the wall," "frisked him," and "handcuffed him," Tr. 11669; and (4) Bell "was arrested as a result of a co-defendant of his by the name of Bigweh" and was thereafter upset "that Bigweh had ratted him out," Tr. 12092-96.  If the district court adheres to its harmless error analysis based on the accomplice confession, it should address this issue as well.

                    *          *          *

In sum, on remand the district court is directed to:

(1) Analyze each of the challenged evidentiary rulings under the analytical framework set forth in *Hawkins v. Costello*, 460 F.3d 238, 242-44 (2d Cir. 2006);

(2) Discuss more thoroughly whether the collective impact of the challenged evidentiary rulings — considered together with the prosecutor's summation — warrants habeas relief; and

(3) Clarify the evidentiary basis for the "confession of an accomplice" it referenced, *e.g.*, 2008 WL 2484585, at *11, *18, as well as the weight this "confession" received in its harmless error analysis.

In undertaking this analysis, the district court is of

13

course free to develop the record further using its discretion under 28 U.S.C. § 2254.

Accordingly, for the foregoing reasons, the judgment of the district court is hereby **VACATED** and **REMANDED** for further proceedings consistent with this order. Within ten days of the district court's filing of its written response to this order, either party to the proceedings may restore the case to this panel by giving notice to the Clerk of the Court. *See United States v. Jacobson*, 15 F.3d 19, 22 (2d Cir. 1994).

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

14