OPINION OF THE COURT
 

 Rosenblatt, J.
 

 Defendant was charged with attempted murder in connection with a shooting. Seeking to show that someone else com
 
 *353
 
 mitted the crime, he moved to introduce evidence that, two months after the shooting, a person present at the shooting had used the same gun in an unrelated crime. On the appeal before us, we consider the appropriate standard for the admission of evidence of this type.
 

 In November 1996, police responded to a report of a shooting at a deli in Brooklyn. Upon arriving, they found Michael Cleland lying on the floor, bleeding from several gunshot wounds. Police recovered shell casings and fragments of bullets. Several days later, Cleland gave the police his account of the crime, naming defendant as the shooter. He knew defendant from the neighborhood, and there was bad blood between them. Cleland told of making a purchase at the deli, after which he came face-to-face with defendant and several of defendant’s friends. A dispute ensued. -As Cleland turned to leave the store, he heard gunshots and felt a pain in his back. He spun around and allegedly saw defendant holding a gun as defendant’s friends fled. According to Cleland, defendant fired at him two more times and missed. As Cleland lay on the floor, defendant allegedly fired another two or three rounds, hitting Cleland in both legs, and ran off.
 

 Upon learning that he was wanted by the police, defendant turned himself in. Police placed him under arrest. Waiving his
 
 Miranda
 
 rights, defendant gave a statement disputing Cleland’s account. He told police that he and Cleland were arguing inside the deli and that Cleland knocked him down with a large candle. While on the floor, he heard gunshots and ran out of the deli, not noticing who had fired the gun or that Cleland had been wounded.
 

 At trial, the principal issue was who shot Cleland. From the outset, the defense acknowledged that defendant was at the scene but denied his involvement in the shooting. Before calling their ballistics expert, the People turned over to the defense a report linking the bullets (recovered from the floor of the deli) to a gun used by a man named Maurice Booker over two months later in an unrelated assault. The prosecutor moved to preclude the defense from using the report. In opposition, defendant asserted that Maurice Booker was “Moe” who had been at the deli at the time of the shooting. The ballistics report, defendant argued, supported his contention that someone else — Booker—was the shooter. The court conditionally granted the People’s motion to preclude, but assured the defense that it would allow the report into evidence if the defense could show that Booker was present at the shooting.
 

 
 *354
 
 Attempting to do so, defendant cross-examined the People’s two main witnesses, Cleland and the assigned detective. Cleland acknowledged that someone named “Moe” was at the deli. According to Cleland, Moe was standing in the doorway at the time of the shooting. Furthermore, the detective revealed that his investigation turned up an individual named Maurice Booker, who was also known as “Moe.” It had become obvious that Booker and Moe were one and the same. Indeed, the prosecutor was in no position to claim otherwise, having argued that “if the defense opens the door as to Moe Booker present and Moe being at the scene, then the People are allowed to have this detective testify that he received a phone call linking up [defendant] and Moe as being involved in another shooting robbery in Staten Island.” Defendant then sought to introduce the ballistics report into evidence. The trial court refused, stating that “there [was] not evidence-in-chief before this jury placing Mr. Booker inside [the deli] or even outside [the deli] at a time that’s relevant.”
 

 The jury convicted the defendant of attempted murder in the second degree. The Appellate Division affirmed, holding that the defense had “failed to show a clear link between the third party and the crime in question.” (270 AD2d 291.) We reverse.
 

 The “clear link” standard employed by the Appellate Division appears to have been gleaned from this Court’s decision in
 
 Greenfield v People
 
 (85 NY 75 [1881]). The defendant there was on trial for killing his wife. The trial court prohibited a defense witness from testifying that, on the night of the murder almost a mile from the scene, he had overheard three men who may have been discussing their commission of a crime. This Court held that the overheard statements were inadmissible, largely on hearsay grounds. The Court further commented on the statement’s lack of probative force, noting that
 

 “[w]hile evidence tending to show that another party might have committed the crime charged would be admissible,
 
 before such testimony can be received there must be such proof of connection with it, such a train of facts or circumstances as tend clearly to point out some one besides the [defendant] as the guilty party.
 
 Remote acts, disconnected and outside of the crime itself, cannot be separately proved for such a purpose”
 
 (Greenfield v People, supra,
 
 at 89 [emphasis added]).
 

 The
 
 Greenfield
 
 Court, however, said nothing to suggest that it was fashioning a new or specialized test for evidence of third-
 
 *355
 
 party culpability. Indeed, the phrase “clear link” was not used in New York until
 
 People v Aulet
 
 (111 AD2d 822 [1985]). There, the defendant stood accused of arson. At trial, his girlfriend testified on his behalf that her six-year-old son had started the fire. The defendant sought to call witnesses who had seen the six-year-old set fires on other occasions but the trial court precluded the evidence
 
 (see, People v Aulet, supra,
 
 at 824-825). On appeal, defendant argued that the ruling denied him his constitutional right to a fair trial. Citing
 
 Greenfield,
 
 the Appellate Division rejected his argument. It held that the trial court did not abuse its discretion because “the probative value of the offered testimony was outweighed by the danger that its introduction would prolong the trial to an unreasonable extent without any corresponding advantage,
 
 and because the proof would not have provided a clear link
 
 to [the six-year-old] as the arsonist”
 
 (id.,
 
 at 826 [emphasis added]).
 

 Following
 
 Aulet,
 
 the Appellate Divisions have regularly employed the “clear link” standard to review trial court determinations that excluded evidence of third-party culpability
 
 (see, e.g., People v Snow,
 
 237 AD2d 118, 118-119 [1st Dept];
 
 People v Pack,
 
 189 AD2d 787, 787-788 [2d Dept];
 
 People v Conway,
 
 274 AD2d 663, 664 [3d Dept];
 
 People v Young,
 
 277 AD2d 910, 910 [4th Dept]). To meet this standard, evidence of third-party culpability “must do more than raise a mere suspicion that another person committed the crime; there
 
 must
 
 be a
 
 clear link
 
 between the third party and the crime in question”
 
 (see, People v West,
 
 277 AD2d 263, 264 [emphasis added]).
 

 This appeal presents us with the opportunity to determine whether the “clear link” phraseology best articulates the standard that should govern the admissibility of evidence of third-party culpability. For reasons that follow, we hold that the test is better described in terms of conventional evidentiary principles.
 

 As a general rule, evidence is relevant if it tends to prove the existence or non-existence of a material fact, i.e., a fact directly at issue in the case. Relevant evidence, however, is not necessarily admissible. A court may, in its discretion, exclude relevant evidence if its probative value is outweighed by the prospect of trial delay, undue prejudice to the opposing party, confusing the issues or misleading the jury
 
 (see, People v Davis,
 
 43 NY2d 17, 27;
 
 see also, People v Scarola,
 
 71 NY2d 769, 777). Evidence “of merely slight, remote or conjectural significance” will ordinarily be insufficiently probative to outweigh these countervailing risks
 
 (see, People v Feldman,
 
 299 NY 153,
 
 *356
 
 169-170 [citing
 
 People v Nitzberg,
 
 287 NY 183, 189];
 
 see also, People v Ventimiglia,
 
 52 NY2d 350, 359 [“Efforts to quantify the degree of probativeness necessary for admission establish that the evidence must be of more than ‘slight value.’ ”] [citations omitted]).
 

 In third-party culpability cases, the Appellate Divisions employ the “clear link” standard, rather than couching their review in terms of weighing probative value against countervailing risks. Courts in other jurisdictions use similar phrases, such as “direct connection”
 
 (Smithart v State,
 
 988 P2d 583, 586 [Alaska 1999]) and “point directly”
 
 (State v Potts,
 
 334 NC 575, 584-585, 433 SE2d 736, 741). These catch phrases merely reinforce the notion that remote evidence of a third party’s culpability — though relevant — will not be sufficiently probative to outweigh the risk of trial delay, undue prejudice or jury confusion. As one commentator notes, phrases like “clear link” are usually shorthand for weighing probative value against prejudice in the context of third-party culpability evidence: if there is some “clear link” or “direct connection” between the third-party evidence and the charged crime, courts generally conclude that it is of sufficient probative value to be admissible
 
 (see,
 
 David McCord,
 
 “But Perry Mason Made It Look So Easy!”: The Admissibility of Evidence Offered by a Criminal Defendant to Suggest That Someone Else is Guilty,
 
 63 Tenn L Rev 917, 936 [Summer 1996];
 
 see also, People v Hall,
 
 41 Cal 3d 826, 834, 718 P2d 99, 104 [noting that “courts should simply treat third-party culpability evidence like any other evidence”];
 
 State v Braddock,
 
 452 NW2d 785, 789-790 [SD] [applying general evidentiary rules to determine admissibility of evidence of third-party culpability];
 
 Winfield v United States,
 
 676 A2d 1, 11-12 [DC] [same]).
 

 To the extent that the “clear link” standard implies no more than an abbreviation for the conventional balancing test, it presents no problem. A review of clear link cases reveals that the courts would very likely have made the same ruling regardless of the nomenclature. “Clear link” and similar coinages, however, may be easily misread as suggesting that evidence of third-party culpability occupies a special or exotic category of proof.
 

 The better approach, we hold, is to review the admissibility of third-party culpability evidence under the general balancing analysis that governs the admissibility of all evidence. In this setting, we note that the countervailing risks of delay, prejudice and confusion are particularly acute. If those concerns
 
 *357
 
 were not weighed against the probative value of evidence, the fact-finding process would break down under a mass of speculation and conjecture. Courts thus have been careful to exclude evidence of third-party culpability that has slight probative value and strong potential for undue prejudice, delay and confusion
 
 (see, Greenfield v People, supra,
 
 85 NY 75, 89 [excluding evidence of “(r)emote acts, disconnected and outside of the crime itself’ to prove that someone else is the guilty party];
 
 see also, State v Scheidell,
 
 227 Wis 2d 285, 307, 595 NW2d 661, 673 [requiring that third-party culpability evidence shares “nearness in time, place, and circumstances to the alleged crime or to the fact or proposition sought to be proved”];
 
 State v Williams,
 
 593 NW2d 227, 233 [Minn] [defendant must prove “facts to connect (the third person) with the crime”];
 
 State v Sturdivant,
 
 31 NJ 165, 179, 155 A2d 771, 778 [searching for “some thread capable of inducing reasonable men to regard (third-party culpability evidence) as bearing upon the State’s case”]). The admission of evidence of third-party culpability may not rest on mere suspicion or surmise. In practice, the balancing is best performed by requiring the defense, at the earliest reasonable opportunity, to make an offer of proof outside the presence of the jury to explain how it would introduce evidence of third-party culpability. The court will then hear any counter-arguments from the prosecutor, weigh the considerations, and make its determination followed by clear directives as to what it will and will not allow.
 

 Here, the ballistics report is relevant evidence insofar as it links a third person — Moe Booker — to the gun used to shoot Cleland. When coupled with proof that Moe Booker was at the scene of the shooting, its probative value plainly outweighs the dangers of delay, prejudice and confusion. The trial court, however, improperly precluded the evidence. This constituted error as a matter of law.
 

 Accordingly, the order of the Appellate Division should be reversed and a new trial ordered.
 

 Chief Judge Kaye and Judges Smith, Levine, Ciparick, Wesley and Graffeo concur.
 

 Order reversed, etc.