OPINION OF THE COURT
Barry E. Warhit, J.
The defendant, through a subpoena duces tecum signed by this court on January 17, 2011, seeks disclosure from the New York State Division of Criminal Justice Services (DCJS) of the names and other identifying information of 64 males who, by virtue of their status as convicted criminals, have profiles maintained in the State DNA Index System (SDIS). The defendant’s application for disclosure is limited to those, if any, of the *588 64 men who were born before November 1, 1983, alive on November 18, 1996 and not continuously incarcerated from November 18, 1996 through November 21, 1996.
On January 21, 2011 DCJS filed a notice of motion and affirmation in support of its application to quash said subpoena duces tecum. On January 27, 2011, the defendant submitted an affirmation in opposition and, in turn, on February 1, 2011 DCJS submitted a reply affirmation. On February 3, 2011 the defense provided this court with an additional letter in support of its position.
On or about November 21, 1996 a bloody knife was recovered from the crime scene of the murders of Archie Harris and Betty Ramcharan. Blood on the blade of this knife was determined to be that of the victim, Betty Ramcharan. Forensic testing conducted on swabs taken from the handle of this knife revealed mixed profiles consisting of DNA determined to belong to Betty Ramcharan and two unknown males. The defendant, Selwyn Days, was excluded as a contributor to the mixed sample as was homicide victim, Archie Harris.
At the defendant’s request and upon consent of the People, the mixed profiles swabbed from the handle of the knife were submitted to the Westchester County Department of Laboratories and Research (Westchester Lab) for comparison to the approximately 370,000 DNA samples maintained in SDIS.
Toward this end, a keyboard search was performed on two 4-loci DNA profiles found to be contained in the swab taken from the handle of the knife. This keyboard search revealed the possibility that the mixed sample at issue could be a match to 270 DNA profiles maintained in SDIS. After exhausting all available information and technical and analytical means available to it, the Westchester Lab was able to conclusively exclude all but 64* of the 270 DNA profiles. An internal memorandum prepared in connection with this effort deemed these 64 remaining hits to be “non-matches” to the mixed sample found on the handle of the knife.
DCJS has moved to quash the subpoena duces tecum primarily on grounds that release of the identifying information is strictly prohibited by article 49-B of the Executive Law as well as numerous binding interagency memorandums and user agreements. DCJS also contends that the defendant has not *589 met the threshold standard establishing that the information sought constitutes relevant and exculpatory evidence since the 64 individuals whose identifying information is desired have not been deemed “offender matches” or even “partial matches” and because the defendant has not established the required nexus between any of the 64 individuals and the crimes for which the defendant stands charged.
Section 995-d (1) of article 49-B of the Executive Law renders all records, findings, reports and results of DNA testing performed on any person confidential and directs that such items and information shall not be disclosed or redisclosed without the consent of the subject of the DNA testing. Further, section 995-d (1) specifies that information may not be disclosed by subpoena or other legal process except “in response to a subpoena issued on behalf of the subject of such DNA record or on behalf of a party in a civil proceeding where the subject of such DNA record” is at issue.
The defendant does not contest the plain meaning of Executive Law § 995-d (1). Rather the defendant proffers that he is entitled to disclosure under exceptions carved out by sections 995-d (2) and 995-c (6) (b).
Section 995-d (2) of the Executive Law permits disclosure of otherwise confidential information to a court, the prosecution and the defense in relation to a criminal proceeding. The defendant urges that this exception applies to the case at bar because the identifying information of 64 individuals in SDIS is necessary in furtherance of Mr. Days’ defense. The interpretation that this statutory exception is applicable is offered without support in the form of case law or statutory commentary. This court declines to adopt the defendant’s reasoning with respect to the meaning of section 995-d (2) as such an overly broad reading has the effect of completely eviscerating the strict confidentiality espoused in section 995-d (1) and is also at odds with the clearly imposed limitations imposed by Executive Law § 995-c (6) (b).
Executive Law § 995-c (6) (b) authorizes disclosure of otherwise confidential information “for criminal defense purposes, to a defendant or his or her representative, who shall also have access to samples and analyses performed in connection with the case in which such defendant is charged” (emphasis added).
This court is not persuaded that the statute permits disclosure in this instance. The DNA testing and analysis resulting in the *590 64 profiles maintained in SDIS, which are the subject of this subpoena duces tecum, were not performed in connection with the investigation of the double homicide for which the defendant, Selwyn Days, stands indicted. To the extent Executive Law § 995-c (6) (b) makes specific reference to “the case in which such defendant is charged,” this section is plainly intended to afford defense counsel an opportunity to inspect and test DNA samples which the prosecution alleges were collected and tested in connection with the crimes for which a particular defendant stands charged.
This statutory interpretation is consistent with the clear language of section 995-c (6) (b) as well as with the discovery obligations set forth in article 240 of the Criminal Procedure Law. Pursuant to article 240, the People are required to disclose property, which by definition specifically includes fingerprints, blood samples, and fingernail scrapings, and make same available for inspection and testing (CPL 240.10 [3]; 240.20 [1]). Of import and interest, this statutory discovery requirement is limited to samples obtained from the named defendant in a case and any codefendant with whom he is being jointly tried (CPL 240.20 [1]).
Consequently, this court finds that disclosure of the names, pedigree and criminal histories of any of the 64 individuals whose profiles are maintained in SDIS is barred by article 49-B of the Executive Law. None of these individuals is a named defendant in the matter of People v Selwyn Days, nor have any of these individuals consented to disclosure of the requested information and, to this court’s knowledge, none has made his DNA report a subject of a civil proceeding (see Executive Law § 995-d [1]).
Assuming, arguendo, that disclosure was not barred by the Executive Law, the defendant, nevertheless, would not be entitled to the information sought. It is well settled that a subpoena duces tecum must be utilized to compel production of evidence which is known to exist, not to ferret out information (see People v Gissendanner, 48 NY2d 543 [1979]). A party seeking disclosure of information through a subpoena duces tecum must demonstrate the materiality and relevance of the items and information sought (see People v Martin, 240 AD2d 5 [1st Dept 1998]; People v Coleman, 75 Misc 2d 1090 [Nassau County Ct 1973]; People v Norman, 76 Misc 2d 644 [Sup Ct, NY County 1973]). A showing that the desired materials are potentially relevant is insufficient. “[A] defendant must put forth some factual *591 predicate which would make it reasonably likely that [the] information will bear relevant and exculpatory evidence” (Matter of Constantine v Leto, 157 AD2d 376, 378 [3d Dept 1990] [internal quotation marks omitted]).
The defendant herein has not set forth a basis in fact upon which it can be concluded that it is “reasonably likely” that any of the 64 individuals who matched at four loci to the DNA profiles were connected to the charged crimes. The defendant contends that the information sought is relevant and material because it is “reasonably likely” to provide valuable information about unknown potential suspects. This statement is belied by the fact that the defendant has absolutely no basis to know whether any of the 64 individuals whose identifying information is sought was born after November 1, 1983, was alive on November 18, 1996 and was not continuously incarcerated from November 18, 1996 through November 21, 1996. The defendant has nothing but hope that any such person’s criminal record will include home invasions, violent crimes or prior arrests and/or convictions in Westchester County (see defendant’s affirmation in support of subpoena duces tecum at 4).
The defendant’s assertion that the evidence sought is material and relevant is further belied by the applicable science. The defendant characterizes the 64 individuals for whom identifying information is sought as “possible” or “partial” matches. However, Mary M. Eustace, CODIS Administrator at the Westchester Lab, deemed these “non-matches” in her internal memorandum, dated February 25, 2009, which the defendant relied upon in support of his application for the subpoena duces tecum. Similarly, in a more comprehensive sworn affidavit, dated January 28, 2011 annexed to the DCJS reply affirmation, Ms. Eustace stated that the 64 samples for which identifying information is sought “did not constitute an ‘Offender Hit’ or a ‘Forensic Hit’ and thus they were deemed ‘No Match’.”
Dr. Barry Duceman, the Director of the Biological Sciences section at the New York State Forensic Investigation Center, reported a concurring conclusion in an additional affidavit annexed to the DCJS reply affirmation. According to a New York State legislative report, Dr. Duceman is a top scientist whose comments, opinion and expertise were relied upon by the DNA subcommittee that promulgated New York State regulations and policy concerning disclosure of information relating to “partial matches” (see NY Reg, Oct. 13, 2010, at 6; Executive Law § 995-b [12], [13]).
*592 The New York State regulations, which govern disclosure of DNA material, authorize disclosure of information concerning a “partial match” when the forensic DNA profile sought to be compared arises from a single, rather than a mixed, source and contains reportable alleles for at least 10 of the CODIS core loci (9 NYCRR 6192.3 [f]). The sample must also meet additional statistical thresholds (id.).
The defendant seeks to compel disclosure of identifying information as to 64 individuals who were implicated based upon a match to mixed, rather than single source, profiles with matches at only four of the CODIS core loci. Applicable New York State regulations do not recognize the matches present in this case as “partial matches” (see 9 NYCRR 6192.3). Consequently, and as the matches at issue are something even less than partial, release of identifying information is contrary to applicable regulations. Of note, the federal regulations governing release of “partial matches” also require a sample from a single source with demonstrated matches at a minimum of 10 core loci (see FBI CODIS Bulletin No. BT072006, July 7, 2006).
It is fair deduction that a match from a mixed source at merely four reported alleles is of questionable scientific value. Indeed, in his affidavit, Dr. Duceman warns that “DNA profile comparisons between four locus mixture profiles and full (13 locus) offender profiles . . . are problematic because the information developed from such comparisons may appear to be significant when, in fact, it has no significance whatsoever” (Duceman affidavit If 8).
It is well settled that a subpoena duces tecum is an appropriate vehicle to compel production of specific documents which are relevant, material and exculpatory (Matter of Constantine v Leto, 157 AD2d at 378). Not only is the information sought by this subpoena duces tecum of dubious relevance or materiality, this court is not persuaded that the information sought directly bears on the issue of the defendant’s guilt or innocence.
This is not a case in which exculpatory evidence has been withheld from the defendant. There is absolutely no dispute that, with respect to the DNA profiles, the People provided the defendant with the exculpatory information in their possession and under their control. The People have no more access to the confidential information sought by the subpoena duces tecum than the defendant.
The defendant has been advised that he has been excluded as a contributor to the mixed profiles on the handle of the knife. *593 The subpoena duces tecum at issue seeks information which, in the best case scenario, may permit the defendant to point the proverbial finger at one or more specific individuals. There is simply no merit to the contention that, without access to information about the 64 individuals who are a match to the mixed profiles at four of a possible 13 alleles, the defendant cannot effectively develop and present a defense that other individuals are responsible for committing the crimes with which he is charged. There is no reasonable probability that the defendant’s lack of access to this confidential and marginally probative evidence will affect the outcome of this trial (cf. People v Vilardi, 76 NY2d 67 [1990]; Kyles v Whitley, 514 US 419 [1995]).
Even if the defendant had access to the material and information sought by the subpoena duces tecum, it would not be admissible at trial. Remote evidence of a third party’s culpability is inadmissible when its probative value is outweighed by the risk of undue prejudice to the opposing party and when such allegations of third-party culpability have the potential to confuse issues, mislead the jury and cause trial delay (People v Primo, 96 NY2d 351 [2001], citing People v Davis, 43 NY2d 17 [1977]).
It is scientifically insignificant that 64 DNA profiles maintained in SDIS matched at four loci to mixed profiles obtained from the handle of the knife. Evidence concerning these less than “partial matches” is of marginal value and would unduly prejudice the People and, to a near certainty, would inject speculation and substantial confusion into this trial. As such, no evidence of these even less than “partial matches” is to be elicited. Any such reference or testimony would run afoul of well-settled law concerning allegations of third-party culpability (see People v Primo, 96 NY2d 351 [2001]; People v Schulz, 4 NY3d 521 [2005]; People v Johnson, 49 AD3d 664 [2d Dept 2008]).
Based upon the foregoing, it is ordered that the application to quash the subpoena duces tecum is granted.

 The internal memorandum, dated February 25, 2009, refers to 63 matches. However, in all other locations the number is indicated to be 64.