Lasher v Albany Mem. Hosp. (2018 NY Slip Op 03402)





Lasher v Albany Mem. Hosp.


2018 NY Slip Op 03402


Decided on May 10, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: May 10, 2018

524909

[*1]CHRISTOPHER LASHER et al., as Legal Guardians of JENNIFER LASHER TINSMON, Appellants,
v
ALBANY MEMORIAL HOSPITAL et al., Respondents.

Calendar Date: March 26, 2018

Before: Devine, J.P., Mulvey, Aarons and Pritzker, JJ.


Featherstonhaugh, Wiley & Clyne, LLP, Albany (James Featherstonhaugh of counsel), for appellants.
Maguire Cardona, PC, Albany (Richard R. Maguire of counsel), for Albany Memorial Hospital and another, respondents.
Phelan, Phelan & Danek, LLP, Albany (Timothy S. Brennan of counsel), for Linda S. Olsen and another, respondents.


Mulvey, J.

MEMORANDUM AND ORDER
Appeals from two judgments of the Supreme Court (Connolly, J.), entered January 17, 2017 and February 1, 2017 in Albany County, upon a verdict rendered in favor of defendants.
On February 17, 2011, Jennifer Lasher Tinsmon spent the evening with her boyfriend, Daniel Despart, with the two ultimately returning to Despart's home around midnight. At some point thereafter, Tinsmon allegedly exited the residence to
retrieve items from her car. According to Despart, Tinsmon did not return for several minutes and, when he went outside to investigate, he discovered Tinsmon lying unconscious on the ground. Despart carried Tinsmon inside and then proceeded to call his parents to help transport her to the nearest hospital. Tinsmon arrived at defendant Albany Memorial Hospital, a subsidiary of defendant Northeast Health, Inc. (hereinafter collectively referred to as AMH), shortly before 3:00 a.m. on February 18, 2011, still unconscious. There, Tinsmon was treated by defendant Linda Olsen, an emergency room physician and an employee of defendant Emergency Medicine Physicians of Albany County, PLLC (hereinafter collectively referred to as the Olsen defendants). A CT scan of Tinsmon's brain showed severe brain injuries, and she was [*2]transported to Albany Medical Center Hospital (hereinafter AMCH) for further treatment at 5:19 a.m. Tinsmon ultimately suffered permanent brain damage and now requires around-the-clock care.
Plaintiffs, Tinsmon's parents, commenced this medical malpractice action in May 2013 alleging, among other things, that Olsen failed to timely consult a neurosurgeon about Tinsmon's injuries and failed to timely arrange for her transfer to AMCH [FN1]. Following joinder of issue and extensive discovery, the matter proceeded to a jury trial, where the main factual issues surrounded the timing of the sequence of events that occurred after Tinsmon was admitted to AMH. Approximately one week into the trial, plaintiffs attempted to call a geographical information systems (hereinafter GIS) expert to present testimony regarding "the location and function of cell phone towers, their receipt of data from individual cell phones, and the operation of that system," for the purpose of explaining the cell phone records of Marie Stark, a respiratory therapist called to help transport Tinsmon to AMCH. Defendants immediately objected and moved to preclude plaintiffs from offering such expert testimony, citing plaintiffs' failure to provide the required expert disclosure (see CPLR 3101 [d] [1] [i]) and asserting undue prejudice as a result of the significant delay in doing so. Supreme Court granted the motion. Following its presentation of evidence, AMH moved pursuant to CPLR 4401 to dismiss any claims of direct negligence against it. Supreme Court granted the application, and AMH remained in the trial on the basis of its potential vicarious liability for Olsen's alleged negligence (see Mduba v Benedictine Hosp., 52 AD2d 450, 452-454 [1976]). The jury ultimately returned a verdict in favor of defendants, finding that Olsen did not negligently fail to timely consult a neurosurgeon once she learned of Tinsmon's CT scan results and, further, that Olsen did not depart from accepted standards of medical care in failing to transfer Tinsmon to AMCH without waiting for Stark to arrive. Judgments were thereafter entered in favor of each set of defendants. Plaintiffs now appeal, challenging certain rulings made by Supreme Court during the course of the trial.
Claiming that AMH and the Olsen defendants were united in interest in this lawsuit, plaintiffs assert that it was error for Supreme Court to permit the full participation of both sets of attorneys throughout the trial. CPLR 4011 vests the trial court with the authority to "regulate the conduct of the trial in order to achieve a speedy and unprejudiced disposition of the matters at issue in a setting of proper decorum." "Under both our Federal and State Constitutions, a defendant has the right to defend in person or by counsel of his [or her] own choosing.. . . This right is not restricted to criminal actions; it is equally applicable to civil actions" (Schulman v Consolidated Edison Co. of N.Y., 85 AD2d 186, 188 [1982] [internal quotation marks and citations omitted]; see Matter of Abrams [John Anonymous], 62 NY2d 183, 196 [1984]). While "a party's entitlement to be represented in ongoing litigation by counsel of his or her own choosing is a valued right which should not be abridged," it is not without limit (Scopin v Goolsby, 88 AD3d 782, 784 [2011] [internal quotation marks, brackets and citations omitted]; see Greene v Greene, 47 NY2d 447, 453 [1979]; Schulman v Consolidated Edison Co. of N.Y., 85 AD2d at 188). Nevertheless, "any restriction imposed on that right will be carefully scrutinized," and such right "will not yield unless confronted with some overriding competing public interest" (Matter of Abrams [John Anonymous], 62 NY2d at 196; see S & S Hotel Ventures Ltd. Partnership v 777 S. H. Corp., 69 NY2d 437, 443 [1987]; Rosenzweig v Blinshteyn, 149 AD2d 280, 283 [1989]).
Prior to trial, plaintiffs sought to limit AMH and the Olsen defendants to representation by one attorney or, alternatively, to moderate the participation of AMH's counsel, claiming that the two sets of defendants had "identical defenses." While it is true that the primary allegations of negligence were directed at Olsen and that liability on the part of AMH for Olsen's negligence, if any, would be purely vicarious, plaintiffs' theory of liability against AMH was not so limited. To the contrary, plaintiffs' bill of particulars sets forth various claims of direct negligence on the part of AMH, including allegations that AMH deviated from acceptable standards of care or was otherwise negligent by "failing to have adequate and/or appropriate policies and/or procedures for the transfer to AMCH of traumatic head injury patients"; "failing to have adequate and/or appropriate policies and/or procedures for neurosurgical consultation"; and "failing to have adequate and/or appropriate policies and/or procedures for availability of a respiratory therapist for the transfer of patients to AMCH." Given the separate and distinct liabilities of AMH and the Olsen defendants at this juncture of the litigation, there was simply no basis upon which to limit the participation of AMH's attorney (see Chemprene, Inc. v X-Tyal Intl. Corp., 55 NY2d 900, 901 [1982]; Phillips v Chevrolet Tonawanda Div. of General Motors Corp., 43 AD2d 891, 892 [1974]; Lyman v Fidelity & Cas. Co., 65 App Div 27, 28 [1901]).
Following the dismissal of all claims of direct negligence asserted against AMH, plaintiffs renewed their motion to have the role of AMH's counsel limited. While the dismissal of the direct negligence claims rendered AMH's potential liability purely vicarious in nature, we are unable to conclude that Supreme Court's refusal to limit the role of AMH's counsel during the remainder of the trial to essentially that of a spectator was in error. Because AMH's liability would be determined by the jury's findings in relation to plaintiffs' claims of negligence against Olsen, AMH was entitled to participate in the efforts to defeat those claims (cf. Phillips v Chevrolet Tonawanda Div. of General Motors Corp., 43 AD2d at 892). Supreme Court promised to exert control over the cross-examination of the remaining witnesses by AMH's counsel, indicating its intent to prevent any attempt by AMH to "reiterate or to plow ground that has already been plowed by one side or the other," and the record reflects that counsel's cross-examination of these witnesses, if any, was limited and dealt primarily with different material than that explored on direct examination. The balanced approach taken by the court served to ensure defendants' valued right to representation by counsel of their choosing while also protecting plaintiffs against the possibility of unduly cumulative and duplicative proof (see Newark v Pimentel, 117 AD3d 581, 581 [2014]). Under these circumstances, we find no "clear abuse of discretion" in the course of action taken by Supreme Court nor any prejudice to plaintiffs as a result thereof (Feldsberg v Nitschke, 49 NY2d 636, 643 [1980]; see CPLR 4011; cf. Salm v Moses, 13 NY3d 816, 817 [2009]; Matter of Aniya L. [Samantha L.], 124 AD3d 1001, 1002 [2015], lv denied 25 NY3d 904 [2015]; Newark v Pimentel, 117 AD3d at 581; compare Mars Assoc. v New York City Educ. Constr. Fund, 126 AD2d 178, 193 [1987], lv dismissed 70 NY2d 747 [1987]).
Nor are we persuaded that a new trial is warranted because Supreme Court permitted evidence, in the form of a patient log and treatment records, showing that a cardiac arrest patient was being treated by Olsen on the same night as Tinsmon. With regard to the patient log, it was plaintiffs' own attorney who opened the door to testimony concerning that subject. During his cross-examination of an expert witness called by the Olsen defendants, counsel asked, "This was not a busy night in the emergency department, was it, Doctor? There's no evidence in this record that Dr. Olsen was diverted from treating [Tinsmon] for one second due to another patient, is there?" In response, the expert answered, "I reviewed some of the emergency department log and there was a cardiac arrest during the time period [Olsen] was working." Plaintiffs' counsel immediately objected to the expert's response on the basis that defendants had failed to disclose the patient log in response to their discovery requests but, after a brief recess to allow counsel to [*3]review the patient log and the various discovery demands, counsel withdrew such objection. By so doing, plaintiffs waived any challenge to the expert's testimony concerning the cardiac arrest patient (see Dean v Security Mut. Ins. Co., 21 AD3d 658, 660 [2005]; Matter of James E., 17 AD3d 871, 873 [2005]; Calix v New York City Tr. Auth., 14 AD3d 583, 585 [2005]; see also Matter of Reed v Annucci, 155 AD3d 1193, 1194 [2017]; People v Brooks, 26 AD3d 596, 597 [2006]). Counsel for plaintiffs then continued to question the expert about the patient log and, thereafter, offered that document into evidence. Accordingly, plaintiffs cannot now object to the admission of the patient log into evidence (see CPLR 5501 [a] [3]; cf. People v Green, 92 AD3d 953, 954 [2012], lv denied 19 NY3d 864 [2012]; Elnakib v County of Suffolk, 90 AD3d 596, 597 [2011]).
Later in the trial, the Olsen defendants subpoenaed the cardiac arrest patient's treatment records from Albany Memorial Hospital. Plaintiffs acknowledged that the document did not fit into any of their disclosure demands, thereby waiving any current contention that the treatment records should have been disclosed in response thereto (cf. Barrowman v Niagara Mohawk Power Corp., 252 AD2d 946, 946 [1998], lv denied 92 NY2d 817 [1998]; see generally People v Ahmed, 66 NY2d 307, 311 [1985]). Contrary to plaintiffs' further contention, Supreme Court did not err in admitting such treatment records into evidence. "Evidence is relevant if it tends to prove the existence or nonexistence of a material fact, i.e., a fact directly at issue in the case" (Johnson v Ingalls, 95 AD3d 1398, 1399 [2012] [internal quotation marks, brackets and citation omitted]). Here, plaintiffs' cross-examination of the Olsen defendants' expert raised the possibility that, given the time stamps on the patient log, the cardiac arrest patient was not treated contemporaneously with Tinsmon. In response, the Olsen defendants sought admission of the cardiac arrest patient's treatment records in order to show that Olsen's treatment of this patient was contemporaneous with her treatment of Tinsmon. The treatment records were thus relevant to a fact at issue in the case (see People v Primo, 96 NY2d 351, 355 [2001]; Johnson v Ingalls, 95 AD3d at 1399), and cannot be said to have unfairly surprised plaintiffs inasmuch it was introduced in response to their cross-examination of the expert (compare People v Shaulov, 25 NY3d 30, 35 [2015]). In any event, upon our review of the record, we are satisfied that any error in the admission of the patient log and treatment records of the cardiac patient "would not have substantially influenced the outcome of the trial" (Anderson v Dainack, 39 AD3d 1065, 1067 [2007]; see CPLR 2002; Nationstar Mtge., LLC v Davidson, 116 AD3d 1294, 1296 [2014], lv denied 24 NY3d 905 [2014]; Brown v County of Albany, 271 AD2d 819, 820 [2000], lv denied 95 NY2d 767 [2000]; Khan v Galvin, 206 AD2d 776, 777 [1994]).
Finally, Supreme Court did not abuse its discretion in denying plaintiffs' mid-trial application to present the testimony of a GIS expert. CPLR 3101 (d) (1) (i) requires a party to disclose his or her expert witness and certain expert information prior to trial when served with a proper demand. The statute further provides that, "where a party for good cause shown retains an expert an insufficient period of time before the commencement of trial to give appropriate notice thereof, the party shall not thereupon be precluded from introducing the expert's testimony at the trial solely on grounds of noncompliance with this paragraph" (CPLR 3101 [d] [1] [i]). The expert disclosure requirements of CPLR 3101 (d) are "intended to provide timely disclosure of expert witness information between parties for the purpose of adequate and thorough trial preparation" (McColgan v Brewer, 84 AD3d 1573, 1576 [2011] [internal quotation marks and citation omitted]; see Silverberg v Community Gen. Hosp. of Sullivan County, 290 AD2d 788, 788 [2002]; Bauernfeind v Albany Med. Ctr. Hosp., 195 AD2d 819, 820 [1993], lv dismissed and denied 82 NY2d 885 [1993]), and a trial court is vested with considerable discretion to preclude expert testimony "where the non-complying party fails to show good cause for its delay and/or that disclosure was not intentionally withheld" (Douglass v St. Joseph's Hosp., 246 AD2d 695, 696 [1998]; see Silverberg v Community Gen. Hosp. of Sullivan County, 290 AD2d at 788; [*4]Tleige v Troy Pediatrics, 237 AD2d 772, 774 [1997]). "Only a clear abuse of that discretion will justify our intervention" (McMahon v Aviette Agency, 301 AD2d 820, 821 [2003] [citations omitted]; see DG & A Mgt. Servs., LLC v Securities Indus. Assn. Compliance & Legal Div., 78 AD3d 1316, 1318 [2010]; Doherty v Schuyler Hills, Inc., 55 AD3d 1174, 1175 [2008]).
Here, plaintiffs first notified defendants of their intention to call a GIS expert more than three years after defendants' respective demands for expert disclosure and during the midst of the trial. Notably, Stark's cell phone number was provided to plaintiffs during a pretrial deposition more than a year and a half earlier and, thus, plaintiffs possessed the essential facts necessary to investigate the matter — and, if necessary, to retain an expert — long before trial. Plaintiffs' claim that they did not realize the significance of the calls, and thus the need to subpoena the phone records, until shortly before trial did not, as Supreme Court found, constitute good cause for the delay (see Lucian v Schwartz, 55 AD3d 687, 688 [2008], lv denied 12 NY3d 703 [2009]; Amodeo v Town of Marlborough, 307 AD2d 507, 509 [2003]; Vigilant Ins. Co. v Barnes, 199 AD2d 257, 257 [1993]). Moreover, we agree with Supreme Court that, given the complex and technical issues presented by the proposed GIS testimony, the mid-trial disclosure of this expert would have prejudiced defendants (see Marwin v Top Notch Constr. Corp., 50 AD3d 977, 977-978 [2008]; Fava v City of New York, 5 AD3d 724, 724-725 [2004]). Under these circumstances, we cannot conclude that Supreme Court abused its discretion in precluding plaintiffs from offering the testimony of their GIS expert (see Colucci v Stuyvesant Plaza, Inc., 157 AD3d 1095, 1098-1099 [2018], lv denied ___ NY3d ___ [May 3, 2018]; Lucian v Schwartz, 55 AD3d at 688; Schwartzberg v Kingsbridge Hgts. Care Ctr., Inc., 28 AD3d 463, 464 [2006]; Fava v City of New York, 5 AD3d at 724-725; Amodeo v Town of Marlborough, 307 AD2d at 509; Karney v Arnot-Ogden Mem. Hosp., 251 AD2d 780, 784 [1998], lv dismissed 92 NY2d 942 [1998]; Quinn v Artcraft Constr., 203 AD2d 444, 445 [1994]; Vigilant Ins. Co. v Barnes, 199 AD2d at 257).
Plaintiffs' remaining contentions, to the extent not specifically addressed herein, have been reviewed and found to be without merit.
Devine, J.P., Aarons and Pritzker, JJ., concur.
ORDERED that the judgments are affirmed, with one bill of costs.



Footnotes

Footnote 1: Plaintiffs commenced a separate action against Despart and his parents. Such action was settled shortly before the commencement of trial in the instant action.