People v Dixon (2019 NY Slip Op 03167)





People v Dixon


2019 NY Slip Op 03167


Decided on April 26, 2019


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on April 26, 2019
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: SMITH, J.P., PERADOTTO, DEJOSEPH, TROUTMAN, AND WINSLOW, JJ.


94 KA 14-00855

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
JOSEPH DIXON, DEFENDANT-APPELLANT. 






D.J. & J.A. CIRANDO, ESQS., SYRACUSE (BRADLEY E. KEEM OF COUNSEL), FOR DEFENDANT-APPELLANT.
JOSEPH DIXON, DEFENDANT-APPELLANT PRO SE.
BROOKS T. BAKER, DISTRICT ATTORNEY, BATH (JOHN C. TUNNEY OF COUNSEL), FOR RESPONDENT. 


 Appeal from a judgment of the Steuben County Court (Peter C. Bradstreet, J.), rendered March 24, 2014. The judgment convicted defendant, upon a jury verdict, of manslaughter in the first degree. 
It is hereby ORDERED that the judgment so appealed from is unanimously affirmed.
Memorandum: Defendant appeals from a judgment convicting him upon a jury verdict of manslaughter in the first degree (Penal Law
§ 125.20 [1]). On the evening of November 22, 2011, defendant was observed arguing with the victim, his girlfriend, at her home. The next morning, November 23, a friend picked defendant up on the road outside the victim's home. That, the friend would testify, was unusual. On a typical morning, he picked defendant up at the victim's home and saw the victim. Sometimes, the friend had coffee with defendant and the victim. Later on November 23, defendant told the friend that he was moving to Tennessee. The following day, November 24, the victim was found beaten and strangled to death in her home. The police located defendant in Pennsylvania. In an interview with the police, defendant admitted that, on the evening of November 22, he and the victim had been drinking heavily, and he pummeled her repeatedly with his fists. "It always ended up in a fight every time we drank together." Defendant told the police that he did not recall most of what happened because he was black-out drunk. He insisted, however, that he knew the victim was alive when he left her house because he heard her moaning.
Defendant contends that County Court abused its discretion in allowing testimony about prior acts of domestic violence that defendant committed against the victim. We reject that contention. It is well settled that, " [i]n a domestic violence homicide, . . . it is highly probative—quite often far outweighing any prejudice—that a couple's [relationship] was strife-ridden and that defendant previously struck and/or threatened the [ ]victim . . . . Indeed, it has also been held that such evidence in like contexts is highly probative of the defendant's motive and [i]s either directly related to or inextricably interwoven . . . with the issue of his [or her] identity as the killer' " (People v Parsons, 30 AD3d 1071, 1073 [4th Dept 2006], lv denied 7 NY3d 816 [2006]; see People v Rogers, 103 AD3d 1150, 1152 [4th Dept 2013], lv denied 21 NY3d 946 [2013]). Here, the victim's sister testified that, over the duration of the relationship, the victim suffered frequent black eyes and bruises that got worse as the relationship progressed. She also heard defendant leave threatening messages on the victim's answering machine. Another witness, an acquaintance, was around defendant and the victim only twice, and both times heard arguing and swearing. One of those times, defendant displayed physical rage, albeit towards an inanimate object. We conclude that the testimony of the sister and the acquaintance was probative of intent, motive, and identity in this domestic violence homicide, and its probative value was not outweighed by its prejudicial impact (see Rogers, 103 AD3d at 1152-[*2]1153).
Defendant's further contention that some of the foregoing testimony constituted inadmissible hearsay is not preserved for our review (see People v Pendarvis, 143 AD3d 1275, 1276 [4th Dept 2016], lv denied 28 NY3d 1149 [2017]; cf. People v Cotton, 120 AD3d 1564, 1566 [4th Dept 2014], lv denied 27 NY3d 963 [2016]). In any event, we conclude that any error in admitting the testimony is harmless (see generally People v Crimmins, 36 NY2d 230, 241-242 [1975]). We likewise conclude that, viewing the evidence in the light most favorable to the People (see People v Contes, 60 NY2d 620, 621 [1983]), the evidence is legally sufficient to support the conviction (see generally People v Bleakley, 69 NY2d 490, 495 [1987]) and, viewing the evidence in light of the elements of the crime as charged to the jury (see People v Danielson, 9 NY3d 342, 349 [2007]), the verdict is not against the weight of the evidence (see generally Bleakley, 69 NY2d at 495).
Defendant next contends that the court abused its discretion in precluding evidence of the victim's prior conviction of a drug crime. More particularly, defendant contends that the conviction is relevant to whether the victim was killed by an unknown third party. Defendant failed to preserve his contention for our review because he sought to introduce evidence of the conviction solely to impeach the victim's credibility (see generally People v Lane, 7 NY3d 888, 889 [2006]). In any event, that contention lacks merit. To the extent that the court precluded defendant from presenting a third-party culpability defense, its ruling was proper because such a defense would have been based " on mere suspicion, surmise, or speculation' " (People v Devaughn, 84 AD3d 1394, 1395 [2d Dept 2011], lv denied 18 NY3d 993 [2012]; cf. People v Primo, 96 NY2d 351, 357 [2001]).
We reject defendant's contention that the court abused its discretion in permitting the jury to view "horrifying and grisly" photographs of the victim's dead body. " [P]hotographs are admissible if they tend to prove or disprove a disputed or material issue . . . [and] should be excluded only if [their] sole purpose is to arouse the emotions of the jury and to prejudice the defendant' " (People v Smalls, 70 AD3d 1328, 1330 [4th Dept 2010], lv denied 14 NY3d 844 [2010], reconsideration denied 15 NY3d 778 [2010], quoting People v Wood, 79 NY2d 958, 960 [1992]). We note that the People sought to introduce 37 photographs of the victim's body, each purportedly depicting a separate injury. Defendant objected to all of them. The court reviewed the photographs, precluded two of them as redundant, and allowed the People to introduce the remaining 35 photographs. On appeal, defendant challenges the admission in evidence of only five of those photographs, effectively conceding that the rest were properly admitted. He does not contend, however, that the challenged photographs are any more "horrifying and grisly" than the properly admitted ones. To the contrary, he contends that they are redundant. Because the jury was allowed to view 30 images of the victim's corpse, defendant cannot be said to have suffered prejudice due to the admission of five additional, similar images. We thus conclude that the admission of those five photographs was not an abuse of discretion (see People v White, 153 AD3d 1565, 1566 [4th Dept 2017], lv denied 30 NY3d 1065 [2017]; People v Morris, 138 AD3d 1408, 1409 [4th Dept 2016], lv denied 27 NY3d 1136 [2016]).
The remaining contentions in defendant's main and pro se supplemental briefs do not require reversal or modification of the judgment. To the extent that defendant's remaining contentions concern matters outside the record, he may raise them on a motion pursuant to CPL article 440 (see People v Johnson, 88 AD3d 1293, 1294 [4th Dept 2011]).
Entered: April 26, 2019
Mark W. Bennett
Clerk of the Court