# State of New York Court of Appeals

MEMORANDUM

This memorandum is uncorrected and subject to revision before publication in the New York Reports.

No. 83  SSM 13
In the Matter of Jeremy
Zielinski,
  Appellant,
   v.
Donald Venettozzi, &c.,
  Respondent.

Submitted by Jeremy Zielinski, appellant pro se.
Submitted by Sarah L. Rosenbluth, for respondent.

MEMORANDUM:

The Appellate Division judgment should be affirmed, without costs. Substantial evidence supported the administrative determination because there was "a rational basis for the conclusion adopted by the agency" (*Matter of Marine Holdings, LLC v New York*

*City Commn. on Human Rights*, 31 NY3d 1045, 1047 [2018] [internal quotation marks, brackets, and citation omitted]; *see People ex rel. Vega v Smith*, 66 NY2d 130, 139 [1985]). The record proof, including the inmate misbehavior report, "razor check records,"* and contraband receipt, was adequate to permit a reasonable person to conclude that petitioner was guilty of the charged infraction. In reaching the opposite conclusion, the dissent exceeds the judicial function by impermissibly crediting testimony rejected by the agency and re-weighing the record evidence in petitioner's favor.

The hearing officer did not violate petitioner's constitutional right to call witnesses, as "implemented by the prison regulations in this State" (*Matter of Laureano v Kuhlmann*, 75 NY2d 141, 146 [1990]; *see Matter of Cortorreal v Annucci*, 28 NY3d 54, 58 [2016]). The hearing officer explained that the requested witnesses' testimony was not material and, in the circumstances presented, that conclusion was justified. Petitioner's other arguments are unpersuasive.

---

* In response to petitioner's request at the hearing for certain "razor check records," he was provided "Interdepartmental Memorand[a]" containing the subject line "Cell Standards Inspection/Razor & ID Check."

WILSON, J. (dissenting):

Correctional facilities face a hairy situation: inmates need shaves; shaves require razors; razors can be converted to weapons; weapons must be unavailable to prisoners. Consequently, prison officials choosing to issue razors to inmates must have policies in

place to ensure that those razors are not converted to weapons. Strict adherence to those policies is essential for ensuring the safety of staff, inmates and visitors. Clinton Correction Facility has a razor check policy. Prison officials log the initial delivery of a razor to an inmate. They also conduct weekly cell inspections, part of which involves verifying that each inmate initially issued a razor still has one. However, if an inmate loses a razor and is issued a replacement, that event is not logged. Also, inmates are not required to have a razor; if they do not request one, they are not issued one.

Mr. Zielinski, an inmate there, was punished twice in two months for lacking a razor upon inspection. He alleges his first razor was stolen, the prison never issued him a replacement, and he was thereafter punished for loss of the second razor—a razor he never had. At his disciplinary hearing, prison officials failed to provide any direct proof that Mr. Zielinski had received a replacement razor, relying instead on indirect evidence and inferences that were contradictory, inappropriately admitted, and legally insufficient to establish a necessary element of the infraction. When Mr. Zielinski sought to call clearly relevant witnesses who could testify to the unreliability of the prison's razor tracking practices, the hearing officer denied his request. Because the hearing officer's determination is unsupported by substantial evidence and was made in clear violation of Mr. Zielinski's right to call witnesses in his defense, I dissent.

On January 3, 2017, Mr. Zielinski failed to produce a razor at a weekly inspection. At a disciplinary hearing on January 9, Mr. Zielinski testified that his razor and several other possessions had been stolen the day before when a guard left his cell unlocked, and that he had immediately reported the theft to prison officials. Nonetheless, the hearing

officer found Mr. Zielinski guilty of "los[ing] . . . State property" (7 NYCRR 270.2 [b] [17] [i]) and imposed several penalties, including 30 days of keeplock confinement.[1]

On February 2, 2017, Mr. Zielinski was released from keeplock and returned to the general population. Two days later, Mr. Zielinski failed a second razor inspection, for which he was issued a misbehavior report. However, this time, the reason he failed— according to Mr. Zielinski—was that he had never asked for, and therefore never been issued, a replacement razor. Consistent with his claim, Mr. Zielinski was sporting more than five weeks of facial hair, indicating he had not shaved since the loss of his first razor.

At a disciplinary hearing on February 9, 2017, prison officials introduced several pieces of evidence, although none showed explicitly that Mr. Zielinski had ever been issued a new razor. The misbehavior report demonstrated that as of February 4, Mr. Zielinski did not have a razor, but the report did not attest to when, if ever, Mr. Zielinski received a second razor. No witnesses testified that they had given Mr. Zielinski a replacement razor, or seen him possess one. In lieu of direct testimony, the hearing officer relied upon three pieces of evidence. First, the hearing officer relied on her own statement that Clinton Correctional Facility had a "policy" regarding the reissuance of razors. Had this "standard protocol" been followed, the hearing officer asserted, Mr. Zielinski would have been issued a new razor following his disciplinary hearing on January 9. The hearing officer did not explain the basis for her statement or reference the source of any such policy or protocol— effectively, the hearing officer was serving as both judge and fact witness. (Imagine the

---

[1] Keeplock is "confinement to a cell or room continuously . . . [or] on certain days during certain hours for a specified period" (7 NYCRR 254.7 [a] [1] [v]).

difficulty in cross-examination posed by that situation.)  Second, the hearing officer relied upon the prison's cell inspection records from four consecutive weeks—January 7, 15, 21, and 28—which the hearing officer believed showed that Mr. Zielinski had been in possession of a razor. Those inspection records are not prepared for each inmate; instead, one standard-form interdepartmental memo is prepared for each company in a cell block. The memo does not include a cell-by-cell itemization; instead, it contains a space for the officer inspecting the entire cell block to certify that all cells in the company have been inspected for compliance with numerous requirements, one of which is the razor check. The form also includes a space for the officer to initial next to the statement: "I have inspected all razors on above company and date and have verified that each inmate on the company has a razor . . . Any discrepancies are noted below."  Reviewing the four razor check inspections, the hearing officer determined that because no mention of Mr. Zielinski had been made in the "discrepancies" section of any of the forms, Mr. Zielinski must have had a razor in each of the four weeks prior to the inspection he ultimately failed.  Finally, the hearing officer stated that if Mr. Zielinski had not had a razor during any of the four previous inspections, he would have been issued a misbehavior report, which did not occur.

In his defense, Mr. Zielinski argued that the record checks were not reliable, and that the reason he was not listed in the "discrepancies" section of the records was that he had never been issued a replacement razor.  Mr. Zielinski requested any records the prison kept on the issuance of razors, and requested several witnesses, including 1) an inmate records coordinator, 2) the officer who was in charge of razors, or, 3) if no single officer was in charge of razors, the Deputy Superintendent for Security, who could testify to

"normal practices" around razor replacement.  The hearing officer denied all requests for witnesses, explaining first that Clinton did not have a specific person in charge of its razor policy, and second that the other witnesses were not "relevant" because they were "not present in the incident noted in the misbehavior report."  Having denied Mr. Zielinski's witnesses, the hearing officer proceeded to find Mr. Zielinski guilty of losing state property for a second time and imposed, among other penalties, 75 days of keeplock.

The fundamental issues before us are whether Mr. Zielinski should have been allowed to present evidence that Clinton's razor check verification is not reliable, and whether the hearing officer properly relied upon the absence of a discrepancy on a cell inspection form to conclude that Mr. Zielinski lost state property.  If the records are reliable and show that Mr. Zielinski received a second razor which he lost, his punishment can stand.  But if Clinton's recordkeeping is shoddy, or if the records do not establish that he was issued a replacement razor that he subsequently lost, he should not be punished for losing a razor he never had.

Due process and state regulations protect the right of inmates to call witnesses in disciplinary hearings (*see Matter of Texeira v Fischer*, 26 NY3d 230, 233 [2015] ["The right to call witnesses is codified in DOCCS regulations, which also provide additional protections above and beyond those minimum requirements for procedural due process recognized by the United States Supreme Court."]). Rule 253.5 (a) of the Department of Corrections and Community Supervision, codified in Title VII of the NYCRR, states both the basic right and its three limitations.  The rule provides:

> "The inmate may call witnesses on his behalf provided their testimony is material, is not redundant, and doing so does not jeopardize institutional safety or correctional goals. If permission to call a witness is denied, the hearing officer shall give the inmate a written statement stating the reasons for the denial, including the specific threat to institutional safety or correctional goals presented."

Those procedural protections are enforceable by courts, which regularly review the exclusion of witnesses by prison hearing officers (*see e.g. Matter of Bole v. Coughlin*, 132 AD2d 70 [3d Dept 1987] [annulling guilty determination due to the exclusion of relevant witnesses]; *Matter of Santiago v Fischer*, 76 AD3d 1127 [3d Dept 2010] [holding a hearing officer improperly denied a rebuttal witness]; *Matter of Escoto v Goord*, 9 AD3d 518, 519 [3d Dept 2004] [noting that "a Hearing Officer is . . . obligated to abide by an inmate's reasonable requests so long as the proposed testimony is not irrelevant, redundant or would pose a threat to institutional security"]; *Matter of Caldwell v Goord*, 34 AD3d 1173 [3d Dept 2006] [annulling determination after the denial of relevant witnesses]). Because the state rule provides an affirmative right for inmates to call witnesses, the "burden is on prison officials to prove that there is a valid reason for precluding a witness from testifying" (*Matter of McDermott v Scully*, 145 AD2d 421, 422 [2d Dept 1988]), and that burden cannot be met through mere "speculation" (*Matter of Fox v Dalsheim*, 112 AD2d 368, 369 [2d Dept 1985]).

The hearing officer ruled that the requested witnesses were not relevant. (No claim was made that the testimony of the witnesses would present a security risk or interfere with correctional goals.) Evidence is relevant if "it tends to prove the existence or non-existence of a material fact, *i.e.*, a fact directly at issue in the case" (*People v Primo*, 96 NY2d 351,

355 [2001]). When reviewing whether a piece of evidence may be probative of the existence or non-existence of a material fact, our review is guided by a simple question: "Does learning of this evidence make it either more or less likely that the disputed fact is true?" (McCormick on Evidence § 185 [8th ed Jan. 2020 update]).

Mr. Zielinski's discipline entirely depended on one factual issue: did the prison issue Mr. Zielinski a razor between January 3, 2017 and February 4, 2017? Mr. Zielinski sought to call the Deputy Superintendent for Security to explain the policies and typical practices for tracking and issuing replacement razors, and to call the inmate records coordinator to testify whether misbehavior reports are in fact invariably issued each time an inmate does not have a razor at a cell inspection, as the hearing officer claimed.

These witnesses were undeniably relevant. The hearing officer herself referred to existence of a "standard protocol" to support the inference that "a razor would have been issued [to Mr. Zielinski] following [the disciplinary] hearing on 1/9/17." The hearing officer cannot both be the sole source of evidence about the existence and reliability of the prison's policies (which she described only hazily), and simultaneously deny Mr. Zielinski —as "irrelevant"—all witnesses with knowledge of those very same subjects (*see Escoto*, 9 AD3d at 519 [explaining that a witness becomes relevant, even if the witness may not have been initially, after a hearing officer introduces a related document into the record]).

As a separate matter, the regulations further oblige the hearing officer to provide a stated reason for the denial of any requested witnesses (7 NYCRR 253.5 [a]). Here, the officer's stated explanation plainly fails to comport with basic principles of evidence. The hearing officer stated that the Deputy Superintendent of Security "was not relevant because

the requested witness was not present in the incident noted in the misbehavior report". But the misbehavior report shows only that Mr. Zielinski did not have a razor on February 4; it does not demonstrate that Mr. Zielinski had ever been reissued a razor in the first place. Moreover, Mr. Zielinski was not seeking to question prison officers who were present when he received or did not have a razor; he was seeking to pose questions to persons who could testify as to the prison's policy and the reliability of the records. The hearing officer's stated reason for denying the witnesses—that they were not present at the misbehavior incident—is simply a non sequitur, wholly unsupported by the record (*cf. Escoto*, 9 AD3d at 520 [annulling guilty determination because officer's exclusion of witnesses was not "supported by a sufficient basis in the record"]).

On review, the Appellate Division did not adopt the hearing officer's rationale for denying the witnesses to Mr. Zielinski. Instead, it offered a different rationale, faulting Mr. Zielinski for failing "to demonstrate how his requested witnesses would have provided relevant or nonredundant testimony regarding the determination of guilt" (177 AD3d 1047, 1048). That argument is belied by the record. Mr. Zielinski's explanation for the relevance of the requested witness was thorough and accurate. Mr. Zielinski explained that the witnesses he sought could provide "testimony as to what the policies are supposed to be and . . . whether or not they're actually followed in this case[, which] is certainly relevant to whether those razor check records . . . [were] accurate or reliable". Mr. Zielinski explained the kinds of questions he sought to ask regarding the issuance of razors ("What records are kept? What circumstances are they issued under? Who issues them?"). And Mr. Zielinski tied his requests directly both to disputed issues, and the reliability of the

only evidence presented against him.   The exclusion of the witnesses deprived Mr. Zielinski of his regulatory and due process rights to call relevant witnesses highly material to his defense.

Furthermore, the hearing officer's final determination was not supported by substantial evidence.   Substantial evidence "means such relevant proof as a reasonable mind may accept as adequate to support a conclusion or ultimate fact" (*300 Gramatan Ave. Assoc. v State Div. of Human Rights*, 45 NY2d 176, 180 [1978]). Although the substantial evidence "standard 'demands only that a given inference is reasonable and plausible, not necessarily the most probable'" (*Matter of Ridge Rd. Fire Dist. v Schiano*, 16 NY3d 494, 499 [2011], quoting *Matter of Miller v DeBuono*, 90 NY2d 783, 793 [1997]), substantial evidence "does not rise from bare . . . speculation" and must be "[m]arked . . . by its solid nature and ability to inspire confidence" (*300 Gramatan Ave. Assoc.*, 45 NY2d at 180).

First, the hearing officer's "testimony" as to the razor check policy is internally inconsistent.  Responding to Mr. Zielinski's protests that he had never asked for, and thus never received, a second razor, the hearing officer asserted that the "standard protocol" would have been for Mr. Zielinski to receive a new razor "following [the first disciplinary] hearing on 1-9-17."  However, the hearing officer also stated that the cell inspection records will always note if an inmate is without a razor, and she relied in part upon the inspection record from January 7, 2017 to show that Mr. Zielinski was "not without possession" of his razor in the weeks leading up to February 4.  The hearing officer's two assertions are contradictory.  If the claimed standard protocol had been followed, Mr. Zielinski would not have been issued a new razor until January 9, and therefore the January 7 inspection

record would have noted the absence of a razor. Because the hearing officer relied upon two pieces of contradictory evidence to support the inference that Mr. Zielinski had been given a new razor, the determination lacks substantial evidence and does not constitute "proof [that] a reasonable mind may accept" (*300 Gramatan Ave. Assoc.*, 45 NY2d at 180).[2]

Finally, the hearing officer inappropriately shifted the burden of proof onto Mr. Zielinski. Inmates are not required to have a razor if they do not want one, and the violation Mr. Zielinski was charged with—losing state property—obliges prison officials to prove in the first instance that Mr. Zielinski was given the property prison officials now claim he lost. Put simply: inmates have no duty to maintain the prison's records for it. In the

---

[2] The hearing officer might have been able to resolve these inconsistencies by making a finding that, for example, the January 7 record was unreliable but the other records were reliable, or by finding that the standard protocol had not been followed in this instance. No such findings were made, and we are bound to review the determination of the hearing based on the record and findings made therein (*see Matter of Gitlin v Hostetter,* 27 NY2d 934, 935 [1970]). Furthermore, the hearing officer was not entitled to resolve this contradiction by making a credibility determination, as such a determination would be self-referential to her own testimony about the facility's reissuance policy and her belief that the reissuance policy was followed despite evidence to the contrary. In other words, this was not a situation in which "there [was] substantial evidence on both sides" and the hearing officer was entitled to choose one side based upon a credibility determination (*Matter of Ridge Rd. Fire Dist. v Schiano*, 16 NY3d 494, 500 [2011]). Rather, one of two things must have been true: the razor check records were erroneous, or the hearing officer's understanding of the prison's razor policy was erroneous. The hearing officer's decision, based on two completely incompatible positions, is thus unsupported by substantial evidence. Mr. Zielinski's contentions were consistent and the underlying fact that he had lost a razor in January 2017 was undisputed. Finally, because no evidence concerning the reliability of the cell inspection records was ever presented, and no additional evidence was ever presented showing that Mr. Zielinski was reissued a razor, the hearing officer lacked a basis in the record to resolve those facts against Mr. Zielinski. All of this powerfully highlights why Mr. Zielinski should have been permitted to call witnesses who could accurately state the prison's razor check policy and testify as to the reliability of the razor check information in the cell inspection records.

absence of proper record keeping, prison officers may not presume an inmate took charge of state property. That point is clearly articulated in *Matter of Betances v Leclaire* (47 AD3d 1044 [3d Dept 2008]). There, the court annulled the determination of a hearing officer who found that the inmate, a recent arrival to the correctional facility, had lost a state-issued razor. The court noted:

> "[c]onspicuously absent from this record is any evidence that petitioner was, in fact, issued a razor. The misbehavior report is silent with respect to whether petitioner was issued a razor, no "razor issue log" was presented at the hearing, and there is no other sufficiently relevant and probative hearsay [evidence] set forth in the record to suggest that petitioner was issued a razor."

(*Id*. at 1045 [internal citations and quotation marks omitted]). The same holds true in Mr. Zielinski's case. He was confined to keeplock for thirty days, and upon his hirsute release, was immediately re-charged with losing a razor. No affirmative proof was ever offered that he was issued a second razor. Even if we ignore the regulatory and due process violations and the internal inconsistency of the hearing officer's description of the razor check policy, we are left with speculation, not proof. No official established even the basic probative value of the omission of an inmate's name from the "deficiency" section of the cell inspection records. What deficiency would there be if an inmate in keeplock declined to take charge of state property, as is his right?

Prison officials could have provided affirmative proof if they had followed their own policies. Quite sensibly, Clinton Correctional Facility requires inmates to sign for razors when they are initially issued one. Had prison officials followed that policy when issuing Mr. Zielinski a second razor, there would be clear documentation to support the

charge and notice given to Mr. Zielinski about what witnesses he would need to call to challenge that documentation.  Every person in Clinton Correctional Facility would be safer for it.  Instead, Clinton Correctional Facility has apparently decided to log the initial issuance of a razor, but not any reissuance, even though the potential for harm is the same.  In this case, the victim of this deficient recordkeeping may be Mr. Zielinski: if, as he says, he never received a replacement razor, he has been punished for the correctional facility's failure to track the circulation of dangerous instruments it provides to inmates.  The next victim may be someone harmed by a razor whose issuance the prison refused to track.

On review of submissions pursuant to section 500.11 of the Rules, order affirmed, without costs, in a memorandum. Chief Judge DiFiore and Judges Stein, Fahey, Garcia and Feinman concur. Judge Wilson dissents and votes to reverse in an opinion in which Judge Rivera concurs.

Decided September 15, 2020